ON PETITION FOR REHEARING AND SUGGESTION FOR REHEARING EN BANC BY APPELLANTS AND PETITION FOR REHEARING BY APPEL-LEES
(Opinion June 29, 1987, 11 Cir., 820 F.2d 376).
GODBOLD, Senior Circuit Judge:
On petition for rehearing by appellants/debtors we entered an order on September 8, 1987, 826 F.2d 1010 (11th Cir. 1987), in which we attempted to correct what we believed was an error in our opinion, 820 F.2d 376 (11th Cir.1987). In this order we reaffirmed our conclusion that these consolidated appeals should be dismissed and denied appellants’ petition for rehearing. Subsequently the appellants/debtors filed a petition for rehearing en banc, and the appellees filed a petition for rehearing with respect to the September 8 order.
It now appears that our correction was wrong. We have, therefore, gone back to square one and have reviewed the record and the numerous briefs. There are two appeals before us. No. 86-5286 is an appeal from an order of the district court entered in an appeal to it affirming two orders of the bankruptcy court. This appeal to us is the primary subject of this opinion. We hold that the district court should have dismissed the appeal to it as moot, and we remand to the district court with instructions that it do so. No. 86-5386, a related case, is an appeal to us from an order of the district court dismissing a civil action for damages brought in the district court by the debtors in No. 86-5286 against the major creditors. Our disposition of this appeal is controlled by our decision in No. 86-5286. In No. 86-5386 we affirm the district court’s dismissal.
The appellants are five Chapter 11 debtors — an individual debtor, Theodore B. Gould, and four other debtors owned, controlled, or dominated by Gould. All have been involved in development of the Miami Center project, a modern thirty-five story hotel and office building structure, joined by a restaurant and shopping complex, plus a parking garage, situated at a bay-front site in downtown Miami, Florida. The Bank of New York financed the construction of the project and is the principal creditor. Its mortgage fell into default, and it began foreclosure. The five debtors filed voluntary petitions for bankruptcy, and the bankruptcy court consolidated the estates. The debtors continued in possession.
The debtors and the bank filed competing reorganization plans. The creditor committees and individual creditors overwhelmingly approved the bank’s amended plan and rejected the debtors’ plans. The bank’s amended plan included a proposal that the estates of the five debtors be consolidated. The bankruptcy court entered two orders *1549 that are central to No. 86-5286. On July 23, 1985 it approved substantive consolidation of the debtors’ estates and overruled debtors’ objections to that aspect of the reorganization plan. The court noted:
The consolidation of the five estates is for the purpose of allowing all available funds and assets of the estates to be used in accordance with the Bank’s Amended Plan, if confirmed, to pay all allowed creditor’s [sic] claims.
The court reserved consideration of whether all other aspects of the reorganization plan entitled it to confirmation.
On August 8, 1985 the bankruptcy court considered whether to confirm the debtors’ plans or the bank’s plan. The debtors’ major objections to the bank’s plan were, first, that the assets were worth substantially more than the bank was willing to pay. Second, the Gould interests objected to the provision for consolidation of estates that had been approved in the July 23 order. The court rejected debtors’ plans and approved the bank’s. In its order, reported as In re Holywell Corp., 54 B.R. 41 (Bkrtcy.S.D.Fla.1985), it noted that an application for rehearing and reconsideration of the July 23 order was pending; the court denied the application for rehearing.
Under the amended reorganization plan that was confirmed a liquidating trustee would be appointed and would take charge of the property. The Bank of New York would acquire the Miami Center property from the trustee, together with the furniture, fixtures, and equipment therein, for $255,600,000, a valuation based upon an MIA appraisal.[1] This purchase would be funded through cancellation of the judgment lien held by the bank (approximately $240 million)[2], plus any new cash necessary to come up to the $255.6 million figure. In addition, the bank agreed to release to the trustee $30 million realized from the sale of unrelated property located in Washington, D.C. that had been owned by some of the debtors; this cash was additional collateral held by the bank and subject to its lien.
Moreover, the bank was required to set aside $14 million, backed by surety bonds, to protect the rights of creditors affiliated with Gould, who had been found in a separate order to be lessors of equipment and fixtures located in Miami Center that had been included with the sale to the bank. This order was the subject of a separate appeal. Should the bond ultimately have to pay the lessors for the FF & E under this arrangement it would be entitled to seek reimbursement from the estate pursuant to a trustee’s certificate.
Also the plan provided that certain creditors affiliated with the Gould interests would be “equitably subordinated” to claims of other creditors with lower priority because these Gould-affiliated creditors were “insiders.”
The debtors had filed in the U.S. District Court a separate suit for damages charging that in connection with its loan the bank had committed fraud and various RICO violations. The approved reorganization plan provided that this case, which the bank asserted was a chose in action of the bankruptcy estate and thus due to be under the control of the trustee, was to be dismissed by the trustee.
Debtors moved in the bankruptcy court for a stay of the confirmation order pending appeal. After a hearing the bankruptcy court granted a stay conditioned upon debtors posting a bond in the amount of $140 million, based upon the court’s estimate that an appeal would take a year. In October 1985, on review, the district court reduced the amount of the bond to $50 million, on the assumption an appeal could be expedited and determined in 90 days, and required the bond be filed by October 10, 1985. The debtors appealed the bond ruling to this court, which dismissed for lack of jurisdiction. The debtors did not post a bond, and, beginning October 11, 1985, the trustee and the bank set about *1550 immediately to consummate the reorganization plan as approved. The trustee conveyed to the bank’s designee, a land trust, title to Miami Center and its furniture, fixtures and equipment. The bank gave up its judgment lien, and, in addition, paid approximately $13.6 million of new money, to make up the total consideration of $255.6 million. Also, it released the $30 million of additional cash collateral. The trustee began making payments to 400-plus creditors of the five estates.
On appeal to the district court the debtors attacked the consolidation order and the confirmation order. They asserted that: the necessary bases for the consolidation order were not proved; various of their claims were improperly subordinated to claims of general creditors; the bankruptcy court failed to have a hearing on valuation; the reorganization plan improperly required the trustee to dismiss the separate suit filed by debtors in the federal district court; the reorganization plan discriminated against mechanics and material-men and some unsecured creditors; and the bankruptcy court denied debtors’ due process.
In November 1985 the bank and the trustee moved to dismiss the appeal to the district court as moot because no stay of the reorganization plan had been obtained.
The district court (Sidney M. Aronovitz, D.J.) held that the consolidation and confirmation orders were “intertwined and independent” and that the order approving the plan of reorganization “includes inferentially the effect of the [earlier] Order of Substantive Consolidation.” With respect to both orders, however, the court held that the bankruptcy court had failed to enter sufficient findings of fact and sufficient explanations of its legal reasoning to support adequate appellate review. The court remanded the matter to the bankruptcy court with directions for it:
to schedule and to hold such further adversarial hearings and to make and enter such findings of fact and conclusions of law as are necessary to provide this Court with an adequate basis to decide the instant appeal on the merits.
Order, p. 12.
Despite its conclusion that there were insufficient findings to support appellate review, the court proceeded to address the appellees’ motion to dismiss the appeal for mootness.[3] It looked to the mootness doctrine formerly stated in Bankruptcy Rule 805:
Unless an order approving a sale of property or issuance of a certificate of indebtedness is stayed pending appeal, the sale to a good faith purchaser or the issuance of a certificate to a good faith holder shall not be affected by the reversal or modification of such order on appeal whether or not the purchaser or holder knows of the pendency of the appeal.
It noted that although the mootness standard was not carried forward in Rule 8005, which supplanted Rule 805 in 1983, it is widely accepted in case law, including In re Sewanee Land, Coal & Cattle, Inc., 735 F.2d 1294 (11th Cir.1984). Relying upon a Ninth Circuit case, Matter of Combined Metals Reduction Co., 557 F.2d 179 (9th Cir.1977), the court held that where a debt- or appeals from several orders, some of which are orders approving the sale of property, and fails to obtain a stay, the debtor may proceed with the appeal of orders not involved in the sale. Applying this principle, the district court concluded that the appeal of the consolidation order was not moot because it was not an order of sale, and because, after remand, should it [the district court] rule in favor of debtors on their appeal of the consolidation order, the court could grant meaningful relief to them by reversing that order and “that portion of the confirmation plan of reorganization which incorporates this order.” Order, p. 15. Therefore, it held that it would decide the validity of the consolidation order on the merits after receipt of findings of fact and conclusions of law that it ordered entered by the bankruptcy court.
The court then turned to the confirmation order. It did not address the status of *1551 the bank as a good faith purchaser within the meaning of the mootness cases. Nor did it speak to its holdings that the consolidation order, though standing alone was not an order approving the sale of property, was an order “involved with the sale” and indeed was “intertwined and interdependent.” Rather, as appears from the portions of its order quoted below, the court noted that the purchaser was a desig-nee of the bank and within its jurisdiction, and it analyzed its ability to give “effective relief” by considering whether it was capable of undoing what had been done. The court stated that it could reverse its subordination of debtors’ claims and return them to their pre-confirmation status; it could require the trustee to reinstate the separate suit that debtors had filed; and it could review alleged procedural flaws in the valuation proceedings leading up to confirmation and in other unspecified proceedings. The court put its finger on the central dispute:
This appeal is primarily directed at recovering title to the Miami Center property held by the bank’s designee and obtaining review of the bankruptcy court’s substantive rulings noted above [the rulings in the confirmation order].
Ms. Op. p. 17.
As to this central matter, the court held: [S]hould this court decide the substantive appeal before it in the appellants’ favor, the sale of the Miami Center, and its equipment and fixtures, could be undone.
Id. at p. 18.
♦ * # * * *
Although the Miami Center is now held by the Bank’s designee, it is still in the effective possession of the Bank which, as appellee in this matter, is under the jurisdiction of the court. Should this court decide, after reviewing the findings made by the court below on remand, that the entire plan of reorganization was erroneously approved, it could fairly order the transfer of the Miami Center property back to the debtors, on the condition that those funds taken from the Thirty Million ($30,000,000) Dollars collateral for payment to creditors remain undisturbed or be applied in behalf of debtors. The Bank of New York would be returned to its position as chief secured creditor, and could either propose a different plan of reorganization before the bankruptcy court or pursue remedies available to it as mortgagee. The appellants would be returned to the status of debtors in possession of the property, and could likewise attempt to obtain creditor approval for an alternate plan while seeking a buyer for the Miami Center which would be willing to pay what the debtors contend is the property’s true value.
Id. at pp. 18-19.
Upon application by the bank the district court certified to this court under 28 U.S.C. § 1292(b) the issue of whether the appeal to it was moot. This court declined to accept the case.
On remand, on the consolidation issue, the bankruptcy court conducted a hearing, took evidence, and heard argument. On the confirmation issues it invited evidence. None was tendered except on valuation and calculation of the amount of the bank’s lien.
The bankruptcy court entered lengthy findings and conclusions,[4] which included:
1. Holdings rejected the debtors’ reorganization plans because, among other reasons, the debtors had no buyer and they were in litigation on nearly every *1552 front.[5]
2. Elaborate findings on relations between the debtors that supported the requirement of consolidation.
3. Detailed findings of improprieties involving the Gould interests that justified subordination of various of the Gould-related claims.
4. As to valuation, that under one approach debtors’ valuation was higher than that of the MIA appraiser presented by the bank but the debtors had produced no purchaser willing to pay the higher figure, and that under another approach the valuations of debtors and the MIA appraiser were very near the same.
Following these findings and conclusions the court held:
Based upon all of the foregoing, the Court finds that the $255.6 million purchase price offered by the Bank for the Project (including the FF & E) is fair and equitable, and is in the best interest of the creditors. The Court further finds that the Bank is a good faith purchaser.
With respect to the separate suit, the court found it had no significant value because debtors had executed releases as to transactions between them and the bank; rather the suit was a detriment to the estate because of the attorney fees it was generating.
The court also found that it had had the unusual opportunity to observe the substantial consummation of the reorganization plan and that its “fairness, feasibility and propriety” had been verified by these occurrences: administrative claims had been paid or reserved; secured claims had been paid in full; class 3 claims had been paid in full; undisputed claims in classes 4 through 6 had been paid in full and funds reserved for disputed claims; several disputed claims had been compromised, saving the estates millions of dollars; there remained sufficient funds for the satisfaction in full or in part of the claims of the Gould-affiliated claimants (many of which were unliquidated).
Finally the court went on to hold:
No stay is in effect, and the confirmed plan has been consummated. The debtors’ property passed to the Liquidating Trustee, and the debtors were discharged under Code Section 1141. It is now legally and practically impossible to unwind the consummation of the Bank’s plan or otherwise to restore the status quo before confirmation.
With respect to consolidation, the court found the facts, and applied the controlling law, at length. It found that in most respects creditors had not objected to consolidation, that the debtors would not be substantially prejudiced by consolidation, and that the hundreds of creditors (many not represented by counsel) should not be required “to engage in a shell game” in attempting to determine which of the interrelated debtors involved in the Miami Center project would be able to pay them. The difficulty in tracing the obligation of claims against the affiliated creditors was, the court held, “completely attributable to the labyrinth that Gould has created.”
The bankruptcy court confirmed the orders it previously had entered. The matter came back to the district court with the bankruptcy court’s elaborate findings and conclusions. Without addressing the mootness issue the court considered the merits and entered an order on March 20,1986. It held that the confirmation order before it for review consisted of the initial confirmation order [entered August 8, 1985], as amended by the findings of fact and conclusions of law entered by the bankruptcy court on remand. It reiterated that the confirmation order and the consolidation order were “intertwined and interdependent.” With respect to each issue relating to confirmation, including valuation, the district court reviewed the facts as found by the bankruptcy court and the applicable law and found no error. Following this careful, point-by-point review, the district court affirmed the August 8 confirmation order, as amended by the bankruptcy *1553 court's order on remand, and affirmed the order approving consolidation.
Arguably the district court should have dismissed the appeal as moot when the case was first before it. But we pretermit discussing this because we hold that the court should have dismissed the appeal as moot when the case came back to it after remand.[6]
The mootness standard is preserved in the present bankruptcy code at 11 U.S.C. § 363(m), but this provision applies only to the sale of the debtor’s property by the trustee pursuant to § 363(b) or (c). Section 363(m) does not apply where the debtor’s assets have been sold, as here, by a liquidating trustee pursuant to a plan of liquidation. All parties agree that in this case we look for guidance to the case law.
The Eleventh Circuit, like other circuits, has recognized the continuing viability and applicability of the mootness standard in situations other than transfers by a trustee under § 363(b) or (c). In re Sewanee Land, Coal & Cattle, Inc., 735 F.2d 1294 (11th Cir.1984); Markstein v. Massey Associates, Ltd., 763 F.2d 1325 (11th Cir.1985); In re Matos, 790 F.2d 864 (11th Cir.1986).
In Sewanee the mortgagees/creditors were permitted to foreclose, both district and circuit courts refused stay pending appeal, and the property was sold at foreclosure to the creditors. On appeal debtors asserted the sale should be rescinded and the property returned to them. Looking to the case law, this court dismissed the appeal as moot. Markstein is similar to Se-wanee. No stay was obtained. Mortgagees/creditors purchased the property themselves at foreclosure. On appeal the debtors sought to have the sale rescinded and the property returned, or other equitable relief. This court held that it was powerless to rescind the sale. It ordered a limited remand to the district court with direction that it make specific findings as to the amount of the mortgage debt and to determine whether the bankrupt estate was entitled to excess, if any, of the foreclosure bid over the debt. The court noted that the appellant had been unable to cite, and it had been unable to locate, “any case where a court has granted relief in the situation where property of a debtor was sold at foreclosure to a good-faith purchaser after the debtor had failed to obtain a stay of foreclosure pending appeal.” But it had found no case where the amount of the mortgage debt, and of the excess, if any, had not specifically been determined, thus it remanded on these issues. 763 F.2d at 1327 n. 1. No such issue is involved in the present case. With respect to the purpose of the mootness rule, the court held:
This rule of law [lack of power in the court to rescind sale where there has been no stay] was intended to provide finality to orders of bankruptcy courts and to protect the integrity of the judicial sale process upon which good faith purchasers relied.
Id. at 1327.
Matos follows in the same channel. The bankruptcy court permitted foreclosure, debtors were granted a stay conditioned on filing a bond, which they did not file. The mortgagee/creditor bought the property at foreclosure. This court dismissed the appeal as moot. We said:
It is settled law in this circuit that when the debtor fails to obtain a stay pending appeal of the bankruptcy court’s or the district court’s order setting aside an automatic stay and allowing a creditor to foreclose on property, the subsequent foreclosure and sale of the property renders moot any appeal. Markstein v. Massey Associates, 763 F.2d 1325 (11th Cir.1985); In re Sewanee Land, Coal & Cattle, Inc., 735 F.2d 1294 (11th Cir.1984). This rule of law, which is premised upon considerations of finality, protection of the integrity of the foreclosure sale process, and the court’s inability to rescind the sale and grant relief on appeal even if the purchaser of the proper *1554 ty is a party to the appeal, is fully applicable to this case. Accordingly, the appeal must be dismissed as moot. (Note omitted.)
790 F.2d at 865-66.
The “good faith purchaser” is one who buys in good faith, that is, free of any fraud or misconduct and for value and without knowledge of any adverse claim. In re Bel Air Associates, Ltd., 706 F.2d 301 (10th Cir.1983); Greylock Glen Corporation v. Community Savings Bank, 656 F.2d 1 (1st Cir.1981). Knowledge of claims asserted in a pending appeal does not deprive a purchaser of good faith status. In re Dutch Inn of Orlando, Ltd., 614 F.2d 504 (5th Cir.1980).
When the present case was returned to the district court following remand, the record before the district court included the finding that the bank was a good faith purchaser. It included the detailed findings that the plan was fair, feasible, and proper, and that it had been substantially consummated. And it included the finding that it was legally and practically impossible to unwind the confirmation of the plan or otherwise to restore the status quo. All these findings were affirmed.
The debtors urge, on several grounds, that the mootness standard should not apply:
(1) The mootness rule has no applicability because there has been no transfer to a third party. This argument ties in with the district court’s emphasis on the fact that the sale was to a designee of the bank which was within the jurisdiction of the court. No transfer to a third party was involved in Sewanee, Markstein, or Matos; in each of those cases the purchaser at foreclosure was the mortgagee/ereditor, just as the bank here is the purchaser from the liquidating trustee. Other cases rejecting the “not a third party” argument include Algeran, Inc. v. Advance Ross Corp., 759 F.2d 1421 (9th Cir.1985); Greylock Glen Corp. v. Community Savings Bank, 656 F.2d 1, 4 (1st Cir.1981) (“[T]he fact that the bank was both the seller and purchaser of the property, and a party to the dismissed appeal does not affect its status under Rule 805. The rule does not distinguish between mortgage holders and other potential purchasers of encumbered property. It is designed to give finality to orders of the bankruptcy court that have not been stayed pending appeal____ No less than any other potential purchaser, the bank was entitled to bid upon the Greylock Glen property with the assurance that its title to the property would not be affected by appellate review months or even years later.”)
(2) The bank has never been held to be a purchaser in good faith. On remand the bankruptcy court held the bank was a good faith purchaser, and the district court affirmed the bankruptcy court’s findings and affirmed the confirmation order, as amended by the bankruptcy court’s findings and conclusions. No factual argument is advanced why the bank is not entitled to good faith purchaser status except that the purchaser is a designee of the bank and within the jurisdiction of the court, an argument already rejected above.
(3) The mootness principle is inapplicable because the debtors do not seek return of the property but only modification of the plan, or, restating, they do not attack the sale but only matters that do not directly relate to the sale.
(4) Mootness does not apply where the purchaser has not taken irrevocable steps in reliance on the purchase.
Points (3) and (4) require us to look beyond Sewanee, Markstein and Matos. These three Eleventh Circuit cases concern single sales at foreclosure of property for which in each instance there was a good faith purchaser. In that confined context the cases are a firm application by this circuit of a broader principle that mootness is appropriate where a court cannot give effective relief. A reorganization case, however, may sweep within its ambit more than a discrete and consummated sale to a good faith purchaser. Within a penumbra of the reorganization plan outside of discrete consummated sales there may be aspects of the reorganization that are not *1555 moot.[7] Cases of this nature include Matter of Combined Metals Reduction Co., 557 F.2d 179 (9th Cir.1977); In re AOV Industries, Inc., 792 F.2d 1140 (D.C.Cir.1986); and In re Roberts Farms, Inc., 652 F.2d 793 (9th Cir.1981). These cases tell us that in considering whether in a reorganization case matters not directly related to sales are within the mootness rule, the court may consider the virtues of finality, the passage of time, whether the plan has been implemented and whether it has been substantially consummated, and whether there has been a comprehensive change in circumstances. AOV, 792 F.2d at 1148-49. The court will not, however, allow a “piecemeal dismantling” of a reorganization plan. Id. at 1149. In AOV the court recognized a “strong presumption” of mootness. Id. The court may consider whether relief granted by the court could implicate or have an adverse effect on non-party creditors and will affect the re-emergence of the debtor as a revitalized entity. Id. In Roberts Farms the court considered whether the property transactions “stand independently and apart from the plan of arrangement,” and found that “the many intricate and involved transactions ... were contemplated by the plan of arrangement (even to and including liquidation and reorganization of the debtor corporation) and stand solely upon the order confirming the plan of arrangement for court approval and confirmation of the transactions.” 652 F.2d at 797. The court concluded that to deny mootness and reverse would “knock the props out from under the authorization for every transaction that has taken place” and “create an unmanageable, uncontrollable situation for the Bankruptcy Court.” Id. The Eighth Circuit, In re Information Dialogues, 662 F.2d 475 (8th Cir.1981), refers to the important policy of bankruptcy law that court-approved reorganization plans be able to go forward based on court approval unless a stay is obtained. In Matter of National Homeowners Sales Service Corp., 554 F.2d 636 (4th Cir.1977) the Fourth Circuit, in sustaining good faith purchaser status and dismissing the appeal as moot, relied upon substantial investment that had been made upon reliance of good title to the property having vested in the purchaser.
The debtors acknowledge that the plan of reorganization has been substantially consummated, but, they say, it remains not completed in several respects, as follows: The trustee is claiming substantial additional sums from the bank as a result of examination and audit of the bank’s interest charges and other closing adjustments in the sale of the Miami Center property. If the bank must pay the lessors for FF & E, it will seek repayment from the estate pursuant to the trustee’s certificate, which will deplete sums available to Gould-affiliated creditors. Some disputed claims have yet to be resolved. It is unknown whether claims of Gould-affiliated creditors will be paid in full because some have been assigned a junior priority.
We turn, then, to the relief that the debtors seek and the relationship between it and the reorganization plan. The debtors now say that, although they do not agree with the validity of the sale to the bank, they do not seek to overturn it; indeed, they specifically say that they do not want the property back. They want the sale to stand but the property revalued to a higher figure and the sale price adjusted accordingly. They seek cancellation of the trustee’s certificate issued to the bank to cover its exposure with respect to the FF & E. They want a realignment of priorities of claims that will place some of their claims ahead of other unpaid creditors and give some “super priority” ahead of the bank as mortgagee. They want reinstatement of the separate suit they filed against the bank.
*1556 The debtors recognize that the relief they request may require the bank’s putting up additional cash to preserve its position as purchaser; if so, the bank must sweeten the pot. If it is unwilling to do this, it may have to fall back on its rights as mortgagee.
These prayers for relief must be set against what the bank bargained for, and received, as part of the reorganization plan, and the consequences to the plan of granting the prayers. The bank agreed to give up its judgment, calculated at closing at around $242 million. The amount due under the mortgage and brought forward into the judgment was calculated at “good standing” interest rates; by agreeing to this calculation the bank surrendered a claim to $5 million-$6 million of interest at default rates. Presumably if the sale goes for naught the bank would be entitled to this additional amount.
Closing the sale to the bank stopped the running of interest at approximately $2 million per month. If the sale goes for naught, presumably the bank can seek interest from October 1985, producing an accrual when Judge Aronovitz entered his March 1986 order of approximately $11 million and currently approximately $54 million.
The bank bargained for and purchased the FF & E as part of the sale. Because litigation was in progress over whether title to the FF & E was in lessors of the bankrupt, the bank put up $14 million to pay the lessors if they prevailed. But, since the bank would then have paid twice for the same assets, it was given a trustee’s certificate enforceable against assets of the estate to protect it from the double payment. Without the trustee’s certificate, if double payment ensues, the bank will become an unsecured creditor to the extent of some $14 million. The debtors do not suggest any relief for this risk.
The bank put up $12.5 million of its own money to make up the purchase price. It surrendered $30 million of cash collateral it was holding. These funds have been the primary source for payments to creditors and reserves totalling approximating $30 million. The trustee appeared before the district court when, after remand, it heard argument. He pointed out that he had paid some $14 million in claims, had reserved some $9 million for claims disputed or in litigation, and held some $8 million-$9 million in cash plus some $7 million in a reserve for contested taxes. The trustee pressed his view that the reorganization plan had to be accepted or rejected in its entirety and that rejection would require him to seek to reclaim what he had paid out, much of which was unrecoverable.
The bank might, of course, not wish to become purchaser of the property at an elevated price or to assume the risk of paying twice for FF & E. It might wish to realize on the cash collateral it had held and to foreclose on the real estate. The debtors have not given a meaningful suggestion of how the bank can get back its $12.5 million or get back the $30 million cash collateral; they say only that creditors have some or all of it and are entitled to be paid and that the trustee need not seek to recover back from them.
The bank bargained for dismissal of the separate suit as part of the consideration running to it. The debtors want the case reinstated but do not point to any means of restitution to the bank for being again placed at risk of a fraud/RICO case and subjected to attorney fees for its defense.
All of this demonstrates that the consequences of what debtors seek strike at the sale to the bank and the reorganization plan as a whole. As in Roberts Farms the sale of the primary asset does not “stand independently and apart from the plan of arrangement,” but rather “the many intricate and involved transactions ... were contemplated by the plan of arrangement ... and stand solely upon the order confirming the plan of arrangement.” 652 F.2d at 797.[8] It is “impossible to fashion effective relief” for the bank. Id. Grant *1557 ing the remedies the debtors seek would “create an unmanageable, uncontrollable situation for the Bankruptcy Court.” Id.
The bankruptcy court did not err in finding, and the district court did not err in affirming, that the plan had been substantially consummated and that its fairness, feasibility, and propriety had been verified, and that it had become legally and practically impossible to unwind the consummation of the plan or otherwise to restore the status quo before confirmation. The district court was required to dismiss the appeal as moot.
We turn to No. 86-5386: The district court held that the bankruptcy court had .the power to order the trustee to dismiss the separate fraud/RICO case because: (1) it was a chose in action which was part of the debtors’ estate; (2) on remand the bankruptcy court had conducted a cost/benefit analysis of the value of the suit and concluded that its value was nil; (3) evidence adduced at a post-remand hearing showed that releases previously signed by debtors barred their pursuing the civil action on principles of collateral estoppel.[9]
Judge Aronovitz entered his order affirming the consolidation and confirmation orders on March 20, 1986. On April 30, 1986 District Judge Hoeveler dismissed the fraud/RICO suit, quoting the grounds set out above and, accordingly, entered a dismissal as “an administrative necessity ... compelled by the decision of the Bankruptcy Court below and the affirmation of that decision by Judge Aronovitz.”
Had the appeal to the district court on the consolidation and confirmation orders been dismissed as moot, as it should have been, the judgment of the bankruptcy court in that appeal would have become final. The issues adjudicated by that judgment would then have been precluded from reexamination by Judge Hoeveler in his consideration of whether to dismiss the fraud/RICO case. These same consequences will ensue now upon the entry of an order by Judge Aronovitz dismissing the appeal from the bankruptcy court as moot.
The debtors contend that as a matter of separation of powers the bankruptcy court could not require the district court to give up its jurisdiction. This is not what happened. In October 1985, some five months before Judge Aronovitz affirmed the bankruptcy court, the liquidating trustee, on behalf of the debtors, filed a “stipulation” for dismissal with prejudice of the district court case. All parties asked that consideration of the trustee’s “motion” to dismiss be postponed until the bulk of the bankruptcy proceedings had been resolved.
After Judge Aronovitz entered his ruling and plaintiffs failed to post an appeal bond to stay the implementation of the reorganization plan pending appeal to this court, the liquidating trustee filed a new motion requesting the court to order dismissal of the district court case. Thus, the liquidating trustee, found by the bankruptcy court to be in control of the separate case as an asset of the debtors’ estates, was directed to dismiss the separate suit, he sought to have it dismissed, and Judge Hoeveler responded by entering a dismissal. Dismissal of lawsuits that are assets of the estate is a not-unfamiliar feature of reorganization plans. Debtors' suggestion that the bankruptcy court lacks power, exercised pursuant to a reorganization plan, to direct a trustee to dismiss a suit in a court other than the bankruptcy court is not supported by authority cited to us or by common sense. The underpinnings of the bankruptcy court’s order to the trustee will be finally determined by the bankruptcy court order once the finality of that order is established by the mootness of the appeal to the district court. As now recognized, though retrospectively, the district court’s order dismissing the separate suit, as requested by the trustee, will be correct and will be due to be affirmed.

*1558
Conclusion

We VACATE the order of September 8, 1987 appearing at 826 F.2d 1010.
In No. 86-5286 we VACATE the judgment of the district court affirming the consolidation order and the confirmation order of the bankruptcy court and REMAND that case to the district court with instructions to dismiss the appeal to it from the bankruptcy court as moot.
Forthwith upon entry of the order by the district court, as directed in No. 86-5286, the judgment in No. 86-5386 shall stand AFFIRMED.
The petition for rehearing by the Bank of New York is DENIED. The petition for rehearing by the appellants is DENIED.
No member of this panel nor other Judge in regular active service on the Court having requested that the Court be polled on rehearing in banc (Rule 35, Federal Rules of Appellate Procedure; Eleventh Circuit Rule 35-5), the Suggestion of Rehearing In Banc is DENIED.

. The furniture, fixtures and equipment had been obtained from affiliates of the debtors pursuant to what the district court, in a separate order, had found to be leases.

. In separate proceedings the principal and interest due under the mortgage had been established, and the bank had been granted a final judgment for these amounts.

. The trustee had filed a mootness motion but was not a party to the appeal.

. In this court, as in the district court, the debtors question the bankruptcy court’s having adopted in toto proposed findings and conclusions submitted by the bank. The bankruptcy judge asked, and received, proposed findings from the debtors and from the bank. He adopted those from the bank. Debtors question this procedure (as has this court, Cabriolet Porsche-Audi, Inc. v. American Honda Motor Company, 773 F.2d 1193, 1198 n. 2 (11th Cir.1985)), but this does not render the findings and conclusions invalid. Anderson v. Bessemer City, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). The district court examined the findings under the plainly erroneous rule and affirmed them. We review them as relevant to the mootness issue. Examining them in that constricted scope, we find no error.

. Including the City of Miami, IRS, the general contractor, their former lawyers, the former operator and the leasing agent for the hotel, and prospective tenants for the office building.

. See In re Bel Air Associates, Ltd., 706 F.2d 301 (10th Cir.1983) (no explicit holding by bankruptcy court on good faith purchaser issue. District court remanded to the bankruptcy court for findings, and that court ruled good faith purchaser status applied. District court adopted this determination and dismissed the appeal).

. The possibility of effective relief for matters unrelated to consummated sales does not, however, subsume the central principle that finality of judgments and certainty are to be protected where there have been sales to good faith purchasers. In this case the district court considered as a global question whether it could grant effective relief and concluded that it could do so because it had the power to undo the sale to the bank, restore the property and possession to the debtor, and set aside the sale provision of the reorganization plan. This analysis stood the law of mootness on its head.

. The district court found twice that the consolidation order and the confirmation order were intertwined and independent.

. The bankruptcy court held that it was within the scope of its authority in making this determination because the debtors’ right to pursue this action was a matter concerning the administration of the estates, and/or a counterclaim by the estate against persons filing claims against the estate, and/or confirmation of plans, and/or other proceedings, affecting the liquidation of the assets of the estate, and therefore constituted a "core proceeding.”