**TWIN DEVELOPMENT CORP., Plaintiff,**

v.

**Fred Stanton SMITH, Bank of New York, and Irving Wolff, Defendants.**

**Civ. A. No. 87–0037–C.**

United States District Court, W.D. Virginia, Charlottesville Division.

Nov. 15, 1988.

Robert M. Musselman, Charlottesville, Va., for plaintiff.

Irving M. Wolff, Holland & Knight, Miami, Fla., in pro per.

James Hingeley, Boyle & Bain, Charlottesville, Va.

Vance E. Salter, Coll, Davidson, Carter, Smith, Salter & Barkett, P.A., S. Harvey Ziegler, Kirkpatrick & Lockhart, Miami, Fla., Thomas F. Noone, Emmet Marvin & Martin, New York City, for The Bank of New York.

Herbert Stettin, Herbert Stettin, P.A., Miami, Fla., for Fred Stanton Smith.

## MEMORANDUM OPINION

MICHAEL, District Judge.

The matter comes before the court today upon plaintiff's motion for partial summary judgment and the Bank of New York's motion for summary judgment, which has been joined by defendant Smith. For the reasons elaborated below, the defendants' motion is granted and the action dismissed.

## I. *Background*

While the briefs, memoranda, and various filings here state a multiplicity of issues and arguments on both sides, the basic focus of this litigation is a controversy about who can exercise control over all the capital stock of Twin Development Corporation, with all the concomitant results which flow from that control. Plaintiff asks this court to declare that its assets lie outside the purview of a bankruptcy reorganization plan formulated by a bankruptcy court in Florida and adjudicated numerous times before the United District Court for the Southern District of Florida and the Eleventh Circuit Court of Appeals.

Plaintiff is a corporation that was a wholly-owned subsidiary of Holywell Corporation ("Holywell"). On August 22, 1984, Holywell, along with other parties and related corporate entities, filed a voluntary bankruptcy petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Florida. In filing the required schedule of assets as mandated by the Bankruptcy Code and Rules, Holywell listed 100 percent of the stock of plaintiff as one of its assets. The assets of plaintiff, consisting of real estate, were thereafter sold and the net cash proceeds placed in a segregated account.

The confirmed plan of reorganization created a trust on behalf of the creditors, and all listed assets of the various petitioners in bankruptcy, subject to some exceptions not pertinent here, were placed with the liquidating trustee (defendant Smith) to be dispersed according to the provisions of the confirmed Plan. This bankruptcy plan of reorganization has twice been affirmed by the Court of Appeals for the Eleventh Circuit. The debtors appealed the confirmation order of the bankruptcy court and that order was affirmed by the United States District Court. *Holywell Corporation v. Bank of New York*, 59 B.R. 340 (S.D.Fla. 1986). Debtors appealed this decision and the Court of Appeals dismissed the claim as moot. *Miami Center Ltd. Partnership v. Bank of New York*, 820 F.2d 376 (11th Cir.1987). Upon request of the debtors for a rehearing, the Court of Appeals in a *per curiam* opinion let stand the substance of its previous opinion in the case, modifying that opinion only to note that the district court did not actually find that defendant Bank of New York was a "good faith purchaser." *Miami Center Ltd. Partnership v. Bank of New York*, 826 F.2d 1010 (11th Cir.1987). After an *en banc* hearing, the Court of Appeals, in effect, withdrew that modification contained in their prior *per curiam* opinion. *Miami Center Ltd. Partnership v. Bank of New York*, 838 F.2d 1547 (11th Cir.1988). Moreover, the court of appeal held that the district court should not have considered the substantive arguments raised by the debtors in their first appeal. The court of appeals ruled that

> The bankruptcy court did not err in finding, and the district court did not err in affirming, that the Plan had been *substantially consummated* and that its fairness, feasibility, and propriety had been verified, and that it had become legally and practically impossible to unwind the consummation of the Plan or to otherwise restore the status quo before confirmation. The district court was required to dismiss the appeal as moot.

*Id.* at 1557 (emphasis added).

The consequences of affirming the bankruptcy and district courts' finding that the Plan had been "substantially consummated" are significant. The Bankruptcy Code assigns a different status to a Plan of Reorganization which has been "substantially consummated," as compared to a plan which has not progressed to that status. Modifications of a Plan of Reorganization may be made "at any time *after* confirmation of such plan and *before* substantial confirmation of such plan...." 11 U.S.C. § 1127(b) (Emphases added). The Court of Appeals' ruling quoted *supra* indicates a strong reason for the rule, in that modifications after "substantial consummation" may create a situation where it is "legally and practically impossible to unwind the consummation of the Plan ..." This suggests the aphorism to the effect that it is

impossible to unscramble a scrambled egg.[1]

Debtors have also collaterally attacked the confirmed plan of the bankruptcy court by contesting the right of defendant Smith, as liquidating trustee, to utilize the cash from the sale of Twin's assets. This attack failed in the bankruptcy court and was rejected on appeal by the district court and the court of appeals. The district court held that the debtors were equitably estopped from challenging the plan or from objecting to the liquidating trustee's use of the proceeds from the sale of Twin's assets. *Holywell Corp., et al. v. Bank of New York, et al.*, No. 86–0848, slip op. (D.C.S.D.Fla., February 20, 1987). This holding was affirmed by the Eleventh Circuit. *Holywell Corp. et al. v. Smith et al.*, 843 F.2d 503 (11th Cir.1988). The court of appeals found that "the record abundantly supports the district court's findings" as to the defense of equitable estoppel. *Id.*

The labyrinthine and multifarious proceedings before the Florida courts have made analysis of this case a difficult task, and have engendered a serious concern in this court about the interrelated effects of the numerous appeals of parts of the problem to a number of judges in the Florida courts, to some extent preventing an effective overview of the various aspects of the bankruptcy case, and particularly of the interplay among those aspects. Nonetheless, the matters in issue in this case seem to present a discrete—and presumably singular—aspect of the bankruptcy proceedings, and are resolved here on that basis.

## II. *Defendants' Motion for Summary Judgment*

Defendants argue that Twin is barred from pursuing this action on both *res judicata* and *collateral estoppel* grounds because the issue of the control of all Twin's stock, with its concomitant ultimate control of Twin and of Twin's assets, has been authoritatively decided in previous cases in other courts. Defendants' motion for summary judgment, 7–12.

First, the confirmed Plan provided for the use of the net proceeds of the sale of Twin's assets to pay debts. Amended consolidated plan of reorganization, *In Re: Holywell Corp., et al.*, 48 B.R. 69 (Bankr.S.D.Fla.1985). The Plan was upheld on both direct and collateral attacks before both the district court for the Southern District of Florida and the Eleventh Circuit Court of Appeals. The authority of the trustee to use the Twin cash was specifically upheld by the United States District Court in Florida and recently affirmed by the Eleventh Circuit in March, 1988. *Holywell Corp., et al. v. Bank of New York, et al.*, No. 86–0848, slip op. (D.C.S.D.Fla., February 20, 1987). *Holywell Corp., et al. v. Smith, et al.*, 843 F.2d 503 (11th Cir., 1988). The record in this case establishes that the Washington properties that were sold to raise this cash constituted all of Twin Development's assets. Thus, the fight over Twin's stock certificates ultimately becomes a fight over this cash—a fight which has already been resolved in the trustee's favor by the federal courts in Florida.

The Fourth Circuit has articulated the following standard for invoking successfully a defense of claim preclusion:

> Under the doctrine of *res judicata*, claims asserted in a subsequent suit may be barred by a prior adjudication if three requirements are met: (1) The first suit must have concluded in a final judgment on the merits; (2) The second suit must involve the assertion of claims by persons who were parties or in privity with the parties in the first suit; and (3) The claims asserted in the second suit must be based on the same cause of action as the first suit.

*Kenny v. Quigg*, 820 F.2d 665, 669 (4th Cir.1987) (citations omitted); *see also Harnett v. Billman*, 800 F.2d 1308, 1312 (4th Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1571, 94 L.Ed.2d 763 (1987).

---

1. This maxim, hoary with age, is not entirely accurate. As an engineer once pointed out to this court, a scrambled egg may be successfully unscrambled, by feeding the scrambled egg to a productive hen.

Absent further, and successful, appeal from the various rulings of the Court of Appeals for the Eleventh Circuit, the litigation there has concluded in a "final judgment on the merits" as to the inclusion of all the Twin stock in the Plan of Reorganization and the control of that stock by the trustee.

This litigation involves the strong assertion of claims by Twin, not a party in the various bankruptcy filings, but a party all of whose stock is in the affirmed control of the trustee who was before the bankruptcy court and the various appellate courts, and who is named as a defendant in this case. In the technical sense, Twin may not be "in privity" with a party in the prior litigation, but the relationship here is even stronger than that of privity, in the control of all the stock and thus ultimate control of Twin itself by the trustee.

As pointed out in the later submissions to this court, the assets of a corporation are owned in the legal sense by the corporation, and not by the stockholder. This is clearly true, but such an assertion does not answer the problem presented here. As here, when all the capital stock of a corporation is controlled by one person or one entity, then ultimate control of the corporation resides in that individual or entity, especially in terms of liquidation, satisfaction of debts, and distributions of net assets to the stockholders, here, before bankruptcy, the Holywell Corporation. After Holywell listed that stock as an asset in the bankruptcy filing, and after its inclusion in the Plan of Reorganization, distribution of those net assets must be in accordance with the Plan of Reorganization.

The claims in this suit are based on the same cause of action asserted in the prior litigation. Various additional, other claims were also asserted in the prior litigation, but the cause of action in this suit was likewise asserted in that prior litigation.

Allowing collateral attacks in different courts on confirmed plans of bankruptcy reorganization would represent a serious—and sometimes fatal—threat to the structural integrity of such plans. *See In re: French Gardens, Ltd.*, 58 B.R. 959 (Bankr. S.D.Tex.1986); *cf. In Re: Baldwin–United Corp. Litigation*, 765 F.2d 343 (2d Cir. 1985). A number of courts have found that a confirmation order is *res judicata* as to all the questions that are raised or could have been raised regarding the reorganization plan. *In Re: Amarex, Inc.*, 74 Bankr. 378, 381 (Bankr.W.D.Okl.1987); *In re: Early*, 74 B.R. 560, 562 (Bankr.C.D.Ill. 1987); *In re: French Gardens, Ltd.*, 58 B.R. 959, 962 (Bankr.S.D.Tex.1986); *Republic Supply Co. v. Shoaf*, 815 F.2d 1046, 1053 (5th Cir.1987). It is clear that the propriety of inclusion of all of the Twin stock owned by Holywell as an asset of the estate subject to the control of the bankruptcy court has been fully explored and resolved in favor of the rulings of the bankruptcy court in the various litigations in Florida, and that conclusion is entitled to the benefit of the doctrine of *res judicata*, and is entitled under that doctrine to finality.

Collateral estoppel likewise plays a part in this matter. The issue which plaintiff presses before this court is identical to that which has been litigated extensively and exhaustively at three levels of the federal court system in the Southern District of Florida and the Eleventh Circuit. The Florida bankruptcy court held that only the liquidating trustee was authorized to use Twin assets by virtue of the trustee's control of all the corporation's capital stock, a ruling that was repeatedly upheld by the District Court of South Florida and the Eleventh Circuit Court of Appeals. In some of the opinions in the various Florida litigations, it is not always clearly stated that the controversy is over all the stock of Twin, with the ultimate control of Twin that goes with the control of that stock. That is, the reasoning has stated the control of the stock, but has dealt more fully with Twin's assets as if those assets were initially directly held by the trustee—an implicit recognition of the trustee's right to control Twin through the trustee's holding of all of that stock.

The action before this court is, in essence, an attempt to relitigate the issue of who has the right to control the assets of

Twin Corporation. Because plaintiff, in its complaint, ¶¶ 11–15, is alleging an issue as to Twin stock which has been previously litigated in courts of appropriate jurisdiction, the plaintiff could perhaps be collaterally estopped from pursuing this action, but, as indicated *infra* in the discussion of the doctrine of equitable estoppel, the court does not find it necessary to pursue this question to final resolution, in light of the court's conclusion as to *res judicata*.

From the record, no reason presents itself which would have prevented Twin Development from seeking leave to intervene in the bankruptcy court proceedings in Florida, to protect the rights of that corporation. Such intervention, if granted, would indisputably then subject the corporation, *qua* corporation, to the jurisdiction of the bankruptcy court, but it also would have afforded the corporation such opportunity as the law allows to defend its rights as a corporation against the claims of the trustee arising from the trustee's rights in all the common stock of the corporation.

Failure thus to intervene in itself may well permit the development of a theory of equitable estoppel against Twin Development, though it is not necessary to explore this issue in depth, given the court's conclusion as to the dispositive issue in this case and the resolution of that issue, as set out in this opinion. Since the actions of the bankruptcy court and the trustee relate to all the capital stock of Twin Development, with its concomitant control, and not to the corporation itself which was not before the bankruptcy court as a party, some doubt as to the applicability of the estoppel doctrine as against the corporation arises, but, as indicated, the court feels it not necessary to address this issue to resolution, in light of the court's basic analysis and disposition of this litigation.

Second, contrary to the claims of plaintiff, complaint ¶ 13, defendants argue that the confirmed Plan included all § 541(a) assets of the debtor Holywell Corp. Whether "all the assets" of Holywell were included or not, it is certain that all the capital stock of Twin Development, a wholly owned subsidiary of Holywell, was clearly listed as an asset on Holywell's schedule and it constitutes an asset under § 541(a); the Twin stock is therefore in the Plan and as an integral part of the consummated Plan, could not revest in Holywell and its owner, Gould, the parties in the original bankruptcy proceeding. It is instructive to note that courts have read 11 U.S.C. § 541(a) as "broad and all-embracing." *In re Ryan*, 15 B.R. 514, 517 (D.Md.1981). *See also Universal Cooperatives, Inc. v. FCX, Inc.*, 853 F.2d 1149 (4th Cir.1988); *McLean v. Central States, Southeast and Southwest Areas Pension Fund*, 762 F.2d 1204 (4th Cir.1985).

The total stock of Twin, wholly owned by Holywell, a debtor in the initial proceedings, was properly a part of the bankruptcy reorganization plan, as an asset of debtor Holywell, clearly listed on the schedule of assets. Both the district court and the Eleventh Circuit have found that jurisdiction over all the Twin stock, with the derivative control of the corporation necessarily flowing therefrom, was proper. *Holywell Corp. et al. v. Bank of New York et al.*, No. 86–0848, slip op. (D.C.S.D.Fla. February 20, 1987); *Holywell et al. v. Smith et al.*, 843 F.2d 503 (11th Cir.1988).

This court for some time was concerned that the rulings of the bankruptcy court affected Twin Development both directly and indirectly, though Twin Development as a separate corporation has, so far as the record discloses, never been a party to the proceedings before the bankruptcy court. Facial analysis would indicate no jurisdiction over a non-party, and that analysis is correct. However, the actions of the bankruptcy court and the trustee flowed directly from the inclusion of all the capital stock of Twin in the Plan of Reorganization as an asset of Holywell Corporation, Holywell being a party to the proceedings in the bankruptcy court. These actions, recognizing implicitly, at least, ultimate control over the assets of the corporation by virtue of control over all its capital stock, were directed at that stock and ultimately at the assets controlled by that stock.

The record discloses that all the capital stock of Twin Development was owned by

Holywell for some time before the Chapter 11 filing for Holywell, perhaps from the time of issuance of the stock.

In such a posture, the bankruptcy court and later the trustee, having within the proper jurisdiction of the bankruptcy court all the capital stock of Twin, had the ultimate complete control of Twin Development. By appropriate action as the stockholder, the trustee could perhaps have caused the dissolution of Twin Development, with the distribution of the net assets being made to the trustee. Since there are no minority stockholders, the usual challenges to such action from this source could not develop. Creditors would have to be paid to the extent of available assets in such a dissolution. The Twin Development directors may have opposed such a dissolution, but the ultimate result would have been dissolution, the one uncertainty being the length of time necessary to replace dissident directors under the applicable law of the incorporating jurisdiction and the charter and by-law provisions of Twin Development.

That the course of dissolution was not undertaken may well have been because arrangements had been made to sell all of Twin Development's assets, with the remainder of the sales proceeds, after payment of debts and charges, being held in cash. The Plan of Reorganization required that remainder to be paid over to the trustee.

During the pendency of this litigation, counsel for the trustee and for the plaintiff agreed that no effort to vote or to utilize the stock would be made until this litigation was concluded. So far as the record discloses, this agreement has been carried out.

A number of issues collateral to what the court views as the dispositive issue have been raised and discussed in oral argument and the briefs. An example is the question of payment of capital gains tax asserted to arise from the sale of the Twin Development realty assets. While expressing no opinion on the matter, the court doubts that the Internal Revenue Service is so powerless that it could not follow the proceeds of such sale to an ultimate destination to collect any properly computed and assessed taxes. There appear to be a number of arguments being advanced by the parties as to this matter, but resolution of these arguments is not necessary to resolve the issue before this court.

In brief, the dispositive issue in the litigation before the court is the question of the control of the totality of the capital stock of Twin Development. The court cannot escape the conclusion that the listing of that stock as an asset of Holywell places that stock within the exclusive control of the bankruptcy court, with the consequences that flow from such control. The only difference between the listing of this stock as an asset of Holywell and, for example, the listing as an asset of Holywell of 500 shares of General Motors stock is that the listing in this case is of the whole of Twin Development's capital stock. In either case, the bankruptcy court is required to marshal the stock as part of the assets of Holywell, to be used in the Plan of Reorganization or otherwise as the bankruptcy court might direct under the provisions of the Bankruptcy Code.

Merely because Holywell is now a "discharged debtor" does not mean that the assets of an entity previously owned by the debtor revert back to the debtor. The Twin stock was an asset of the debtor at the time of the adoption of the confirmed reorganization plan and was properly included in that Plan. Following confirmation and substantial consummation of the Plan, then to argue that the Twin stock reverts back to the discharged debtor is to overlook the exception to revestment clearly outlined in the Bankruptcy Code which states that "Except as otherwise provided in the Plan or the order confirming the Plan the confirmation of a Plan vests all of the property in the estate of the debtor." 11 U.S.C. § 1141(b) (1979). It is beyond dispute that all the Twin stock was an asset whose disposition was provided for within the confirmed Plan, and thus was "otherwise provided for" in the Plan. The confirmed Plan and the tortuous trail of litigation which it has spawned has estab-

lished that all the stock of Twin was properly a part of the reorganization plan and thus does not revest in the debtor.

Twin's response to these arguments is that it cannot be bound by principles of *res judicata* or collateral estoppel because it was not a party to the proceedings in Florida. Whether this argument is meritorious does not resolve the issues raised in this litigation. While it is true that Twin was not before the court as a *party*, all of its stock certainly was before the court as the *property* of a party, namely, Holywell. The stock of Twin, as scheduled property of the debtors, was clearly under the jurisdiction of the bankruptcy court. Moreover, it is clear that the bankruptcy court expected Twin and its sister corporations to be wound down. In paragraph (d) of its order of December 31, 1984, the bankruptcy court notes that Holywell will continue to need money to meet ordinary business expenses "until such time as Holywell can wind up the affairs of those selling entities," which included Twin Development.

This matter is appropriate for resolution by summary judgment because there is no dispute as to the material facts and defendants, as the movants, are entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). *Gilmore v. Prudential Ins. Co. of America*, 432 F.Supp. 35 (W.D.Va.1977); *Willett v. Emory & Henry College*, 427 F.Supp. 631 (W.D.Va.1977); *aff'd*, 569 F.2d 212 (4th Cir.1978); *King v. Gemini Foods Services, Inc.*, 438 F.Supp. 964 (E.D.Va. 1976), *aff'd*, 562 F.2d 297 (4th Cir.1977). The facts necessary to resolve this case as this court has analyzed the case are, to put it simply, not in dispute, i.e., the ownership of all of Twin's stock by Holywell, the inclusion of that stock in Holywell's schedule of assets before the bankruptcy court, etc.

### III. *Plaintiff's Motion for Partial Summary Judgment*

Plaintiff alleges in his motion for partial summary judgment that defendant Smith has, in effect, conceded that he has no rightful claim to exercise control over any of the assets of plaintiff. Plaintiff's motion for partial summary judgment, p. 4.

Defendant Smith denies this allegation. Since this court has granted defendants' motion for summary judgment, it is unnecessary to reach plaintiff's motion.

### IV. *Motions for Filing of Supplemental Authority*

The parties have moved this court to permit the filing of supplemental authority. Additional supplemental authority has also been filed. The court grants these motions and has considered the various supplemental materials, along with the previously-filed pleadings, in reaching its decision.

### V. *Conclusion*

The Twin Development stock was unquestionably the property of the debtor, Holywell Corporation. All of Twin's stock was a scheduled asset of Holywell in the bankruptcy proceedings, and thus was under the jurisdiction of the bankruptcy court and subject to inclusion in the Plan of Reorganization. For the reasons stated *supra*, and after a review of the supplemental authority cited by the parties, defendants' motions for summary judgment are granted.

An appropriate Order shall this day issue.