HARLINGTON WOOD, Jr., Senior Circuit Judge.
Morton Scherl (a/k/a Robert Caldwell) used to work for DuPage Boiler Works, Incorporated (“DuPage”). DuPage is the debtor in this litigation. Scherl is presently incarcerated and serving a sixteen-year sentence for, among other offenses, participating in a scheme to defraud DuPage and the DuPage Boiler Works Amended Profit Sharing Plan (“the Plan”). Before DuPage filed a bankruptcy petition, Aetna Casualty and Surety Company of Illinois (“Aetna”) issued its Comprehensive Dishonesty, Disappearance and Destruction Policy, Form B, numbered 08 BY 3833 BCI, effective September 26, 1983 (“the Bond”). The Bond lists both DuPage and the Plan as named insureds. The Bond provides coverage for loss of money, securities, and other property which the Bond’s insureds shall sustain through any fraudulent or dishonest act or acts committed by any of the employees of DuPage or the Plan, acting alone or in collusion with others. The maximum recovery with respect to any single individual is $70,000.00, regardless of how many wrongful acts that individual may have committed.
DuPage filed with Aetna a Proof of Loss on the Bond dated February 19, 1988, naming Scherl and two other employees (William Goodstein and Marshall Adelman) as *297 dishonest employees and alleging a total loss arising from dishonest acts of DuPage employees in excess of four million dollars. The Plan also filed with Aetna a Proof of Loss on the Bond dated February 16, 1988. The Plan’s Proof of Loss also names Scherl as a dishonest employee (as well as Good-stein, Jack Eberwein and Adelman) and alleges a total loss of $747,590.00 arising from dishonest acts of employees.
After negotiations Aetna agreed to tender, without allocating between the two insureds, $210,000.00, which was the policy limit for the claims made with respect to Scherl, Goodstein and Eberwein. Trustees for DuPage and the Plan then agreed to divide the $210,000.00 with the Plan receiving $70,000.00 for Eberwein’s conduct, and with DuPage and the Plan splitting equally $140,000.00 for claims concerning Scherl and Goodstein. Aetna reserved its rights with respect to claims arising out of Adel-man’s conduct, and the Trustees for Du-Page and the Plan agreed to share equally any recovery ultimately achieved upon claims concerning Adelman. On November 21, 1988, the district court entered an order approving the settlement.
On May 3, 1989, a bankruptcy court order approving the settlement of certain fidelity bond claims (“Settlement Order”) was entered over Scherl’s objection. At that time, Scherl was incarcerated and awaiting trial on an indictment charging, among other offenses, conversion of profit sharing funds and mail and wire fraud in connection with the conversion. On May 21, 1990, Scherl was sentenced on the following counts of the indictment to which he pleaded guilty: (i) Count 26, concerning conversion of profit sharing funds; (ii) Count 16, concerning mail fraud in connection with the withdrawal of profit sharing funds; (iii) Count 8, wire fraud in connection with the transfer and diversion of profit sharing funds; (iv) Count 32, escape; and (v) Count 37, income tax evasion. Scherl was sentenced to sixteen years’ imprisonment and ordered to “make restitution in the amount of $741,000.” On March 1, 1991, the district court dismissed Scheri’s appeal of the Settlement Order for lack of standing. Scherl now comes to us contending that the Settlement Order impacts his prospects of parole and his restitution obligations. Like the district court, we conclude that Scherl does not have standing to appeal the order, and we affirm.
In order to appeal a bankruptcy court’s order, a litigant must qualify as a “person aggrieved” by the order. In re El San Juan Hotel, 809 F.2d 151, 154 (1st Cir.1987). A “person aggrieved” by a bankruptcy order must demonstrate that the order diminishes the person’s property, increases the person’s burdens, or impairs the person’s rights. See In re Fondiller, 707 F.2d 441, 442 (9th Cir.1983). The “person aggrieved” test insures that bankruptcy proceedings are not unreasonably delayed by protracted litigation by allowing only those persons whose interests are directly affected by a bankruptcy order to appeal. See El San Juan Hotel, 809 F.2d at 154.
We do not think that Scherl has demonstrated that he is a “person aggrieved” by the Settlement Order. Scherl maintains that the Settlement Order impacts the magnitude of his restitution obligation of $741,000.00. Scherl says that if the $70,-000.00 paid by Aetna to DuPage had instead been applied to the Plan, his restitution obligation would have been reduced by $70,000.00. Scherl comes to this conclusion because he believes that his restitution obligation runs only to the Plan as the specified victim in his plea agreement. Scherl’s position is erroneous.
First, Scherl’s plea agreement states: restitution is due from the defendant and [] the loss to victims of the DuPage Boiler Works Profit Sharing fund fraud is approximately $741,000_ The defendant recognizes that pursuant to 18 U.S.C. § 3663(e)(1), he is subject to the imposition of that amount to the victims, or to those against whom secondary recovery has been made by the victims....
It is obvious the plea agreement refers generally to the victims of Scherl’s scheme, not just to the Plan. Accordingly, Scherl’s restitution obligation of $741,000.00 does not change regardless of the allocation of *298 funds that the Plan and DuPage received from Aetna.
Moreover, under 18 U.S.C. § 3663, Aetna can be considered a victim of Scherl’s scheme. Section 3663(a) states: “The court ... may order ... that the defendant make restitution to any victim of the offense.” Section 3663(e)(1) reads in pertinent part: “the court may in the interest of justice, order restitution to any person who has compensated the victim for its loss to the extent that such person paid the compensation.” The Sentencing Order does not name Aetna specifically, but neither does it specifically name DuPage or the Plan. It simply refers to “victims,” and it is not unreasonable to interpret this term to include Aetna. In United States v. Durham, 755 F.2d 511 (6th Cir.1985), the court held the term “victim” to include an insurer of an automobile burned during a robbery. The Durham court looked to the legislative history behind 18 U.S.C. § 3579, now § 3663, and concluded that Congress intended the definition to reach indirect victims of a crime such as an insurer. See Durham, 755 F.2d at 513.
There is no persuasive argument supporting Scherl’s assertion that he is aggrieved by the Settlement Order. Scherl is not a debtor. He is clearly not a creditor— he owes a great deal of money to the estate. Appellees note that his only conceivable nexus to the bankruptcy litigation is as a shareholder of the debtor corporation. Even that status does not presumptively give him standing to appeal the Settlement Order. See Matter of Central Ice Cream Co., 836 F.2d 1068 (7th Cir.1987) (trustee and corporation itself presumptively represent all interests in a bankrupt firm, preventing stockholders from litigating on their own). Finally, Scherl argues that his prospects for parole are in some way affected by the Settlement Order because the allocation of funds to the Plan will reduce the net amount lost by the victims of Scherl’s scheme. We have already decided that the allocation of funds from Aetna between DuPage and the Plan does not affect Scherl’s restitution obligations and therefore cannot impact his prospects for parole.
Affirmed.