**In the Matter of Joseph ANDREUC-
CETTI and Noemi Andreuccet-
ti, Debtors–Appellants.**

**No. 91–1947.**

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 21, 1992.
Decided Sept. 18, 1992.

Marc A. Primack, Rooks, Pitts & Poust, Chicago, Ill., Martin A. Diestler, Rooks, Pitts & Poust, Wheaton, Ill., for Household Bank F.S.B.

William T. McGrath, Frank Pawlak, argued, Wilson & McIlvaine, Chicago, Ill., for First Nat. Bank of Cicero.

Abraham Brustein, argued, Burke, Smith & Williams, John B. Kalish, John E. Gierum, Kalish & Colleagues, Chicago, Ill., for Joseph and Noemi Andreuccetti.

Before POSNER, EASTERBROOK, and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

Joseph and Noemi Andreuccetti (collectively "the Andreuccettis") appeal from an order dismissing their appeal from the confirmation of the reorganization plan in their Chapter 11 bankruptcy. The district court dismissed their appeal on alternative grounds, concluding, first, that the Andreuccettis' bankruptcy estate was so insolvent that they were without standing to bring the appeal, and second, that the appeal was moot. While we agree with the Andreuccettis that the district court erred in its application of the standing and mootness doctrines, we nonetheless find meritless their challenges to the reorganization plan. Accordingly, we reverse the judgment of the district court but nevertheless

direct it to enter judgment affirming the bankruptcy court.

## I

## BACKGROUND

### A. *Facts*

In 1982, Mr. Andreuccetti formed a partnership with two other persons to develop a condominium project in Illinois. To finance the project, he borrowed several million dollars from American Heritage Savings and Loan (American Heritage) and appellee First National Bank of Cicero (Cicero). The condominium project was not completed, and in late 1983 and early 1984 the banks filed actions in Illinois state court to foreclose and to enforce the loans against Mr. Andreuccetti. Mr. Andreuccetti counterclaimed against the banks, alleging fraud, conspiracy, and misdirection of loan funds. He sought more than $1.2 million in compensatory damages and more than $3 million in punitive damages. Subsequently, American Heritage became insolvent, and appellee Household Bank, fsb (Household), purchased certain assets and liabilities of American Heritage, including Mr. Andreuccetti's notes and the state court foreclosure action. Household succeeded American Heritage as a party in the state court litigation.

### B. *Bankruptcy Court Proceedings*

In August 1984, a few months after the foreclosure suits were filed, Cicero filed an involuntary Chapter 7 bankruptcy petition against the Andreuccettis. In 1989, this case was converted into a Chapter 11 reorganization, but the trustee still remained in place. The Consolidated Disclosure Statement filed by the Andreuccettis and the banks indicates that, in the spring of 1990, the Andreuccettis' total liabilities were estimated at around $3.5 million, approximately $3.25 million of which was owed to Cicero and Household. The statement also indicates that the Andreuccettis had nonexempt real and personal property worth approximately $114,000. Additional assets listed in the statement were the counterclaims pending against the banks. During the course of the bankruptcy proceedings, the trustee sold the condominium property for $1.125 million, and these proceeds were held in an escrow account, subject to further court order. In 1990, the Andreuccettis filed a plan for reorganization, and Household and Cicero jointly filed a competing plan. The Andreuccettis' plan provided for payment of unsecured creditor claims through the recovery, if any, from the state court litigation against the banks. Under the plan, the creditors could receive up to 200 percent of their allowed claims, depending on the results obtained in the litigation. However, they would receive nothing if the lawsuit were unsuccessful. The reorganization plan of the banks was more complex. The most salient features were: (1) the trustee would dismiss all claims against Cicero in the state court litigation, and he would release the punitive damages claim against Household, but the trustee would continue to be able to pursue a claim for compensatory damages against Household; (2) Household would receive the remaining proceeds from the sale of the condominium property; (3) Household would pay, or disburse from the proceeds of the sale, additional administrative claims for compensation to the trustee and his counsel, up to approximately $41,000; and (4) Cicero would contribute assets to the bankruptcy estate, including cash, worth approximately $230,000.

The bankruptcy court ultimately confirmed the banks' plan, and the record indicates that a portion of it has been implemented. Household has received the remaining proceeds of the sale and, under the plan, the trustee and his counsel have been paid around $41,000 as compensation. The trustee and Household have entered into a covenant not to sue on the punitive damages claim, although the trustee has the right to rescind the agreement if the reorganization plan is reversed on appeal. Likewise, the trustee and Cicero have agreed to dismiss the entire counterclaim against Cicero, although that agreement also allows the trustee to reinstate the claim if the reorganization plan is overturned.

## C. *District Court Proceedings*

The Andreuccettis appealed to the district court, raising several challenges to the confirmation of the plan. In particular they alleged: (1) that the plan did not provide for their exemption rights; (2) that the plan inadequately treated administrative claims, particularly those of their attorneys, in violation of 11 U.S.C. §§ 1123 and 1129(a)(9); (3) that the banks did not propose the plan in good faith, in violation of 11 U.S.C. § 1129(a)(3); (4) that the plan impaired their rights in the state court lawsuits without giving them an opportunity to approve it, in violation of 11 U.S.C. § 1129(a)(8); and (5) that the bankruptcy court did not adequately evaluate the propriety of settling the state court law suits. In response, Household filed a motion to dismiss, arguing that the Andreuccettis had no interest in the appeal that would provide them standing to pursue it and, alternatively, that the appeal was moot.

The district court agreed with Household and dismissed the appeal in a short opinion. *In re Andreuccetti,* 127 B.R. 185 (N.D.Ill. 1991). The court declined to reach the merits of the Andreuccettis' arguments, concluding instead that the Andreuccettis were "not sufficiently affected by the confirmation of the reorganization plan to bring this appeal," because the amount of debt was so great that they stood no realistic chance of emerging from bankruptcy with surplus assets. *Id.* at 186. In addition, the court determined that the Andreuccettis lacked standing to pursue arguments related to the administrative claims of their attorneys. *Id.* As an alternative ground for dismissal, the court held that "several factors suggest that the appeal should be considered moot." *Id.* The factors that the court cited in support of mootness were that "[s]ignificant steps have been taken since entry of the confirmation order to implement the reorganization plan," *id.,* and that approximately seven years had passed since the time of filing and the confirmation of the reorganization plan, *id.* at 186–87.

## II

## ANALYSIS

On appeal before this court, the Andreuccettis contend that the district court improperly determined both that they lacked standing to bring this appeal and that the appeal was moot. Household argues that if the district court misapplied the standing and mootness doctrines in this case, the Andreuccettis' appeal is nevertheless meritless and we should affirm the confirmation order of the bankruptcy court. We shall deal with each of these issues in turn.

### A. *Standing*

As we have recently noted:

In order to appeal a bankruptcy court's order, a litigant must qualify as a "person aggrieved" by the order. *In re El San Juan Hotel,* 809 F.2d 151, 154 (1st Cir.1987). A "person aggrieved" by a bankruptcy order must demonstrate that the order diminishes the person's property, increases the person's burdens, or impairs the person's rights. *See In re Fondiller,* 707 F.2d 441, 442 (9th Cir. 1983).

*Matter of DuPage Boiler Works, Inc.,* 965 F.2d 296, 297 (7th Cir.1992). Generally speaking, "[o]nly those persons who are directly and adversely affected pecuniarily by an order of the bankruptcy court have been held to have standing to appeal that order." *Matter of Fondiller,* 707 F.2d at 442; *see also In re Thompson,* 965 F.2d 1136, 1142 n. 9 (1st Cir.1992); *Holmes v. Silver Wings Aviation, Inc.,* 881 F.2d 939, 940 (10th Cir.1989); *Kane v. Johns–Manville Corp.,* 843 F.2d 636, 641 (2d Cir.1988); *In re Cosmopolitan Aviation Corp.,* 763 F.2d 507, 513 (2d Cir.), *cert. denied,* 474 U.S. 1032, 106 S.Ct. 593, 88 L.Ed.2d 573 (1985); 1 Lawrence P. King et al., *Collier on Bankruptcy* ¶ 3.03[5] (15th ed. 1992). This "person aggrieved" requirement is more exacting than the requirements for general Article III standing. *Kane,* 843 F.2d at 642 n. 2; *Matter of Carbide Cutoff, Inc.,* 703 F.2d 259, 264 (7th Cir.1983). Its purpose is to insure "that bankruptcy proceedings are not unreasonably delayed by protracted litigation by allowing only those

persons whose interests are directly affected by a bankruptcy order to appeal." *Du-Page Boiler Works, Inc.,* 965 F.2d at 297.

■ The banks assert that the Andreuccettis lack standing. First, emphasizing the requirement that the interest at stake be "directly" affected, *see Fondiller,* 707 F.2d at 442, Cicero claims that a direct injury to the Andreuccettis is not present here because there is no guarantee that pursuing the state court litigation would provide them a surplus after emerging from bankruptcy. Cicero Br. at 18. As an alternative argument, both banks cite the rule that a "hopelessly insolvent debtor" does not have standing to appeal orders affecting the size of the estate. If a debtor can be so characterized, such an order would not diminish the debtor's property, increase his burdens, or detrimentally affect his rights. *El San Juan Hotel,* 809 F.2d at 154–55; *Fondiller,* 707 F.2d at 442; *see also Matter of UNR Indus., Inc.,* 725 F.2d 1111, 1120 (7th Cir.1984) (The debtor "will be able to appeal to us from the order adopting the plan ... assuming it is not so hopelessly insolvent at that point that it is indifferent to the terms of the reorganization."). Consequently, the debtor "has no pecuniary interest in the distribution of his assets among his creditors" and thus has no basis for standing. *Willemain v. Kivitz,* 764 F.2d 1019, 1022 (4th Cir.1985). The banks then attempt to bring the Andreuccettis within this rule by arguing that the size of the debt owed and the contingencies of litigating the state court claims indicate that the Andreuccettis have no realistic chance of recovering a surplus in this situation. The Andreuccettis, the banks submit, were therefore "hopelessly insolvent," and without any standing to appeal.

■ We cannot accept the banks' contentions. The state court litigation is against the two creditors who together hold the vast majority of the Andreuccettis' debt. The non-bank claims against the Andreuccettis are small in comparison. The outcome of this litigation could potentially have a huge effect on the liabilities of the Andreuccettis and could give them a substantial surplus upon emerging from bankruptcy. Moreover, the compensatory and punitive damages claims in the state court counterclaims, if they had been litigated and not settled, as the Andreuccettis urge, could make it possible for the Andreuccettis to recover an amount sufficient to discharge their debts and also provide them with a surplus following bankruptcy. The reorganization plan effectively extinguishes that chance by settling the suits for less than what would be needed to create a surplus. The Andreuccettis' submission to the district court included allegations that the bankruptcy court failed to accord them sufficient opportunity to establish that the creditors' plan was inadequate and that the bankruptcy court's methodology in assessing the value of the state court lawsuits was flawed. Thus, the Andreuccettis' interest in gaining the possible surplus has been affected by the confirmation of the plan, and they possess a pecuniary interest that could be directly and adversely affected by the confirmation order. This alleged injury is sufficiently direct to allow for standing.[1] We cannot hold that the Andreuccettis' contentions with respect to the bankruptcy court's treatment of these state counterclaims are so unmeritorious as to justify terminating the appeal without reaching the merits.[2]

### B. *Mootness*

■ As an alternative ground for dismissal, the district court held that "several

---

**1.** *See In re Goodwin's Discount Furniture, Inc.,* 16 B.R. 885, 888 (Bankr. 1st Cir.1982) (Debtor would have standing on appeal if "the order appealed from would directly and adversely affect the possibility of residual assets being available to the Debtor."); *see also Kapp v. Naturelle, Inc.,* 611 F.2d 703, 706–07 (8th Cir.1979) ("[W]hen it appears that, if the contested claims are disallowed, there *may be* a surplus of assets to be returned to the bankrupt, the bankrupt is considered to have standing to contest the claims.") (emphasis supplied); *Willemain v. Kiv-*

*itz,* 764 F.2d 1019, 1022 (4th Cir.1985) (quoting *Kapp* and applying the quoted language to question of whether a debtor had standing to bring an appeal).

**2.** We note that, upon reaching the merits of this appeal, we shall be confronted with the distinct issue of whether the Andreuccettis had standing before the bankruptcy court to object to the administrative claims.

factors" in the case "suggest that the appeal should be considered moot." *In re Andreuccetti*, 127 B.R. at 186. As support for this conclusion, the court noted that "significant steps have been taken since entry of the confirmation order to implement the reorganization plan," including payments to the trustee and his attorneys, as well as transfers of money to Household. The district court believed that a finding of mootness was warranted because of the substantial amount of time that the case had spent in the bankruptcy court and the "extensive attention" that it had received there. *Id.* at 186–87 (quoting Dist.Ct. R.20, Household's Br. for Appellee and in Supp. of Mot. to Dismiss at 11).

In concluding that the appeal was moot, the district court relied on a standard for mootness in bankruptcy proceedings that other circuits have articulated in a number of cases. *See, e.g., In re Club Associates*, 956 F.2d 1065, 1069 (11th Cir.1992); *Miami Center Ltd. Partnership v. Bank of New York*, 838 F.2d 1547, 1554–55 (11th Cir.), *cert. denied*, 488 U.S. 823, 109 S.Ct. 69, 102 L.Ed.2d 46 (1988); *In re AOV Indus., Inc.*, 792 F.2d 1140, 1147–50 (D.C.Cir.1986). Under this standard, a court may consider a challenge to a reorganization plan moot and unreviewable "when implementation of the plan has created, extinguished or modified rights, particularly of persons not before the court, to such an extent that effective judicial relief is no longer practically available." *Central States, Southeast and Southwest Areas Pension Fund v. Central Transport, Inc.*, 841 F.2d 92, 96 (4th Cir.1988). In applying this mootness rule in the context of a reorganization case, "the court may consider the virtues of finality, the passage of time, whether the plan has been implemented and whether it has been substantially consummated, and whether there has been a comprehensive change in circumstances." *Miami Center Ltd. Partnership*, 838 F.2d at 1555 (citing *AOV Indus., Inc.*, 792 F.2d at 1148–49). In addition, the court may consider whether, within the facts of the case, it would be highly inequitable to reverse the bankruptcy court's order. *Matter of Crystal Oil Co.*, 854 F.2d 79, 81–82 (5th Cir.1988); *In*

*re Roberts Farms, Inc.*, 652 F.2d 793, 798 (9th Cir.1981). As the Eleventh Circuit noted

[t]he test for mootness reflects a court's concern for striking the proper balance between the equitable considerations of finality and good faith reliance on a judgment and the competing interests that underlie the right of a party to seek review of a bankruptcy court order adversely affecting him.

*Club Associates*, 956 F.2d at 1065. Consequently, when determining whether an appeal has been rendered moot, "the reviewing court must 'scrutinize each individual claim, testing the feasibility of granting relief against the potential impact on the reorganization scheme as a whole.' " *In re Public Service Co. of New Hampshire*, 963 F.2d 469, 473 (1st Cir.1992) (quoting *AOV Indus., Inc.*, 792 F.2d at 1148), *petition for cert. filed*, 61 U.S.L.W. 3059 (U.S. June 29, 1992) (No. 92–14). That is, "[t]he court should reach a determination upon close consideration of the relief sought in light of the facts of the particular case." *Central Transport*, 841 F.2d at 96; *see also In re Texaco, Inc.*, 92 B.R. 38, 46–47 (S.D.N.Y. 1988).

■ We believe that the district court did not analyze properly the Andreuccettis' appeal prior to declaring it moot. Consequently, we must reverse its decision dismissing the appeal on that ground. Here, the Andreuccettis have several discrete challenges to the bankruptcy court's confirmation of the reorganization plan, including that it improperly treated certain claims and interests and that it improperly included in the reorganization plan the settlement of the state court litigation. The district court concluded summarily that these claims were moot because a portion of the plan had been implemented and the case had spent a substantial period of time in the bankruptcy courts. However, as we have just noted, determining whether an appeal has become moot requires a fact-specific inquiry into the nature of the relief sought, and the effects that relief could have on the overall reorganization plan. The district court's order does not reflect

this careful, individualized assessment of each claim to determine if judicial relief is available as a practical matter. Moreover, after our own examination of the record, we are not convinced that the facts of this case clearly indicate that these claims are moot. Although a portion of the reorganization plan appears to have been completed, other aspects of it may remain undone. For example, the record suggests that none of the creditors of the estate, other than Household and the trustee and his counsel, has been paid. Household and Cicero, the parties who are probably most affected by the order, are currently before the court. In addition, the state court litigation against Household appears to remain alive, and the settlement agreements between the trustee and the banks specifically allow the settled claims to be reinstated if the reorganization plan is overturned on appeal. Although the fact that a court could undo a completed act may not necessarily defeat the conclusion that a matter is moot, *see Miami Center Ltd. Partnership*, 838 F.2d at 1555 n. 7, it is certainly a relevant factor for a court determining whether effective relief on a claim can be granted. *Texaco, Inc.*, 92 B.R. at 50 n. 15. In short, the present record cannot support the district court's conclusory determination.

## C. *The Merits*

■ Household asserts that, even if the district court had erred in concluding that the Andreuccettis did not have standing to bring the appeal and that the appeal was moot, the bankruptcy court's confirmation of the plan should be affirmed because the appeal is without merit. We agree. As an appellate court, we may affirm the judgment of a lower court on any non-waived ground supported by the record. *See McCarthy v. Kemper Life Ins. Cos.*, 924 F.2d 683, 686 n. 1 (7th Cir.1991); *see also In re Siriani*, 967 F.2d 302 (9th Cir. 1992) (applying rule in bankruptcy context);

*In re Public Serv. Co. of New Hampshire*, 879 F.2d 987, 989 (1st Cir.1989) (per curiam) (same). Several factors in this case make it clear that we appropriately may resolve the merits of the Andreuccettis' case. First, Household has presented the merits to us in its brief, and the Andreuccettis have had a fair opportunity to respond to its arguments.[3] We also have before us the briefs that the parties submitted on the matter to the district court. Finally, after examining the record, we conclude that the issues in the Andreuccettis' appeal are sufficiently straightforward to be capable of resolution at this point. *See In re Clark*, 927 F.2d 793, 796–97 (4th Cir.1991) (deciding on appeal issue of bankruptcy trustee's ability to bring motion, despite the fact that the district court had not addressed the matter).

On appeal before the district court, the Andreuccettis raised five challenges to the confirmation of the reorganization plan. They alleged: (1) that the plan did not provide for their exemption rights; (2) that the plan improperly treated administrative claims, particularly those of their attorneys, in violation of 11 U.S.C. §§ 1123 and 1129(a)(9); (3) that the plan was not proposed in good faith, in violation of 11 U.S.C. § 1129(a)(3); (4) that the plan impaired the Andreuccettis' interest in the state court lawsuits without giving them a right to vote, in violation of 11 U.S.C. § 1129(a)(8); and (5) that the bankruptcy court did not adequately evaluate the propriety of settling the state court law suits. Dist.Ct. R.13, Br. for Appellant at 6–10. The standard for our review of these contentions is well-established. On appeal, this court exercises de novo review of the district court's and the bankruptcy court's conclusions of law. *Matter of Love*, 957 F.2d 1350, 1354 (7th Cir.1992); *Matter of Seibert*, 914 F.2d 102, 104–05 (7th Cir.1990). Findings of fact made by the bankruptcy court are reviewed under a clearly errone-

---

3. We note that in their reply brief the Andreuccettis did not attempt directly to respond to Household's arguments concerning the merits of the appeal. Instead, they argue that we should remand the case to the district court to obtain its views on the merits. These issues were squarely presented in Household's brief, and the Andreuccettis had a full opportunity to address them. The fact that they made a decision, tactical or otherwise, not to do so should not stop us from deciding these issues here.

ous standard. *Matter of Bonnett*, 895 F.2d 1155, 1157 (7th Cir.1989); *First Wisconsin Nat'l Bank of Milwaukee v. Federal Land Bank of St. Paul*, 849 F.2d 284, 286 (7th Cir.1988).

■ The first three of the Andreuccettis' contentions do not merit extended discussion. First, with regard to the argument that the plan did not provide for their exemption rights, the Andreuccettis do not identify in their briefs either what these exemption rights are or how they were impaired. This argument is so underdeveloped that it cannot be evaluated, and we therefore must reject it. Second, the argument that the plan improperly treated administrative claims is also fatally defective. Here, the Andreuccettis argue that the reorganization plan limited the rights of holders of administrative claims. However, the Andreuccettis themselves do not claim that they hold any of these claims, nor do they assert that they were otherwise adversely affected by the plan's treatment of these claims. Instead, the Andreuccettis attempt to assert the rights of other persons in order to invalidate the plan. As a general rule, a party's desire to protect the rights of others does not permit a court to adjudicate a claim. *Matter of Deist Forest Prods., Inc.*, 850 F.2d 340, 341 (7th Cir. 1988); *Kane*, 843 F.2d at 644–45; *In re Umpqua Shopping Ctr., Inc.*, 111 B.R. 303, 305 (Bankr. 9th Cir.1990); *see also In re Evans Prods. Co.*, 65 B.R. 870, 874 (S.D.Fla.1986) (debtors lack standing to raise the rights of wrongly classified creditors as a means to attack the overall reorganization plan). The Andreuccettis make no argument why the general rule against third party standing should be relaxed in this case, and we therefore conclude that they lack standing to challenge the plan's treatment of administrative claims. *See Holywell Corp. v. Bank of New York*, 59 B.R. 340, 349–50 (S.D.Fla.1986). Third, with regard to the claim that the reorganization plan was not proposed in good faith, we note that the bankruptcy court made explicit findings on the question, and it determined that the plan had been proposed in good faith. R.4 at 1; Tr. 9 at 68. This finding is one of fact, which we will not overturn unless it is clearly erroneous. *Covey v. Commercial Nat'l Bank of Peoria*, 960 F.2d 657, 662 (7th Cir.1992); *Matter of Love*, 957 F.2d at 1354; *Hanson v. First Bank of South Dakota, N.A.*, 828 F.2d 1310, 1315 (8th Cir.1987). The Andreuccettis challenge this finding of good faith by claiming that the sole evidence supporting this determination was the trustee's testimony that he was not aware of any bad faith by anyone involved in the case. Tr. 9 at 68. We note, however, that additional factors are present in the record to support the bankruptcy court's finding, including its personal assessment of the conduct of the parties over the course of the bankruptcy proceedings, Tr. 9 at 68, and the fact that the plan proposed by the banks received overwhelming support from the Andreuccettis' creditors. The bankruptcy court committed no error in concluding that the plan was proposed in good faith. *See Matter of Madison Hotel Associates*, 749 F.2d 410, 425 (7th Cir.1984) (In determining "good faith" the "important point of inquiry is the plan itself and whether such plan will fairly achieve a result consistent with the objectives and purposes of the Bankruptcy Code.").

■ The Andreuccettis' final two challenges to the confirmation of the bankruptcy reorganization plan ought to be analyzed together. The Andreuccettis challenge the confirmation of the plan on the ground that it impaired their interest in the state court lawsuits, and that, under 11 U.S.C. § 1124 and 11 U.S.C. § 1129(a)(8), they should have had an opportunity to approve it. Finally, the Andreuccettis claim that the bankruptcy court erred because it confirmed the plan despite the fact that it "failed to sufficiently discharge its duty of determining the propriety of" settling the state court lawsuits. Dist.Ct. R.13 at 10. In particular, they allege that the bankruptcy court failed to examine certain relevant factors when determining if settlement was appropriate. Both of these contentions turn on the bankruptcy court's decision to accept the settlement of the state court litigation. "The benchmark for determining the propriety of a bankruptcy

settlement is whether the settlement is in the best interests of the estate." *Matter of Energy Coop., Inc.*, 886 F.2d 921, 927 (7th Cir.1989). "Central to the bankruptcy judge's determination is a comparison of the settlement's terms with the litigation's probable costs and probable benefits. Among the factors the bankruptcy judge should consider in his analysis are the litigation's probability of success, the litigation's complexity, and the litigation's attendant expense, inconvenience, and delay." *In re American Reserve Corp.*, 841 F.2d 159, 161–62 (7th Cir.1987) (citations omitted). A bankruptcy court's approval of a settlement of a claim will not be overturned unless it was an abuse of discretion. *Id.* at 162; *Energy Coop., Inc.*, 886 F.2d at 926.

We believe that the bankruptcy court properly exercised its discretion in approving the settlement of the state court lawsuits. The bankruptcy judge was of the view that the settlement represented a realistic assessment of the current value of the state litigation. *Cf. Matter of Central Ice Cream Co.*, 836 F.2d 1068, 1072 n. 3 (7th Cir.1987). In reaching this evaluation, the bankruptcy court was openly concerned with the possibility that Illinois law would not allow the Andreuccettis to recover any punitive damages from Household, the successor of the original alleged tortfeasor, American Heritage. Tr. 9 at 8, 69. If this estimation was correct, the possible recovery for the Andreuccettis may have been even less. Indeed, there was a significant basis for the bankruptcy court's view. *See Mattyasovszky v. West Towns Bus Co.*, 61 Ill.2d 31, 330 N.E.2d 509, 511–12 (1975) (Justifications for the imposition of punitive damages are sharply diminished in those cases in which liability is imposed vicariously.); *Ballard v. Bird*, 84 Ill.App.3d 157, 39 Ill.Dec. 553, 556, 405 N.E.2d 1, 3 (1980) (Exemplary damages are awarded primarily to punish the offender and discourage similar offenses and these punitive and admonitory justifications are sharply diminished where liability is imposed vicariously.). *See also AMPAT/Midwest, Inc. v. Illinois Tool Works, Inc.*, 896 F.2d 1035, 1043 (7th Cir.1990). In addition, the credi-

tors of the Andreuccettis overwhelmingly approved the banks' reorganization plan. At several points in the transcript, the court stated that it felt constrained to follow the wishes of the creditors, particularly because the alternative plan offered by the Andreuccettis would have provided the creditors no guarantee that they would recover any portion of their claims. Tr. 9 at 34–35, 70–71. The court's conclusion, under the circumstances of this case, was certainly on solid ground. When offered double or nothing by the Andreuccettis, the creditors were willing to take a settlement that gave them less than the face value of their claims. The estimation of the value of the Andreuccettis' claim is therefore a credible evaluation of its worth. *Cf. Matter of Central Ice Cream Co.*, 836 F.2d 1068, 1072–73 n. 3 (7th Cir.1987). ("Self-interest concentrates the mind, and people who must back their beliefs with their purses are more likely to assess the value of the judgment accurately than are people who simply seek to make argument.") Indeed, the Andreuccettis presented no evidence or testimony at the confirmation hearing to challenge this valuation. The bankruptcy court properly analyzed the proposed settlement and did not abuse its discretion in concluding that it was in the best interests of the estate. *American Reserve Corp.*, 841 F.2d at 161.

Because we believe that the bankruptcy court was correct in determining that the state suits were worth a great deal less than the amount necessary to create a residuum for the Andreuccettis, there is no necessity to determine whether the bankruptcy court was correct in its determination that the Andreuccettis had no right to vote on the plan. *Cf. In re A.H. Robins Co.*, 880 F.2d 694, 697–98 (4th Cir.) (applying harmless error analysis to challenge to voting procedures when the creditors overwhelmingly approved the plan), *cert. denied*, 493 U.S. 959, 110 S.Ct. 376, 377, 107 L.Ed.2d 362 (1989); *Kane*, 843 F.2d at 646–48 (same).

### Conclusion

For the foregoing reasons we reverse the decision of the district court dismissing the

Andreuccettis' appeal on the basis of mootness and lack of standing. However, we remand the case to the district court with directions to confirm the reorganization plan. The appellees may recover their costs in this court.

REVERSED AND REMANDED WITH DIRECTIONS.