**In re Joseph ANDREUCCETTI, et al., Debtors–Appellants.**

**No. 92 C 1512.**

United States District Court, N.D. Illinois, E.D.

March 2, 1993.

J. Barton Kalish, John E. Gierum, J. Barton Kalish & Colleagues, James Vassilos, Chicago, IL, for debtors—Joseph Andreuccetti and Noemi Andreuccetti.

Martin A. Diestler, Marc A. Primack, Rooks, Pitts and Poust, Chicago, IL, for Household Bank, FSB.

Francis M. Pawlak, William T. McGrath, Burke, Wilson & McIlvaine, Chicago, IL, for First Nat. Bank of Cicero.

Jay A. Steinberg, Hopkins & Sutter, Jerome H. Torshen, Mark K. Schoenfield, Torshen, Schoenfield & Spreyer, Ltd., Chicago, IL, for trustee.

## MEMORANDUM OPINION AND ORDER

ANN CLAIRE WILLIAMS, District Judge.

Debtors Noemi and Joseph Andreuccetti ("Debtors") appeal Bankruptcy Judge John

A. Schwartz' January 22, 1992 Order ("Order") confirming a settlement agreement resolving litigation between the Bankruptcy Estate of Joseph Andreuccetti and defendant Household Bank, f.s.b. ("Household"). This appeal is before the court pursuant to Bankruptcy Rule 8001(a).[1] Household moves to dismiss the appeal for lack of standing, or alternatively, on the merits.[2] Household also moves the court to award it fees as a sanction against debtors' attorney for failure to appear at several status hearings concerning this matter. For the following reasons, Household's motion to dismiss is granted, and Household's motion for fees is granted in part and denied in part.

### BACKGROUND

Joseph Andreuccetti formed a partnership in 1982 with two other persons to develop a condominium project. The project was funded with loans from Household's predecessor in interest,[3] American Heritage Savings and Loan, and First National Bank of Cicero ("Cicero"). The project was not completed, and at the end of 1983 and in early 1984, Cicero and Household filed suits in Illinois state courts to foreclose on the property and enforce the loan against Mr. Andreuccetti. Mr. Andreuccetti counterclaimed, alleging fraud, conspiracy and misdirection of loan funds. His counterclaims sought $1.2 million in compensatory damages and over $3 million in punitive damages.

In 1984, Cicero filed an involuntary Chapter 7 bankruptcy petition against Debtors. In 1989, the case was converted into a Chapter 11 reorganization with the trustee remaining in place. In 1990, Debtors filed a plan for reorganization. Household and Cicero jointly filed a completing reorganization plan ("Plan") which was ultimately confirmed by the bankruptcy court. The Plan essentially consists of two parts. The relevant portions of Part I dealt with the settlement of claims brought by the estate in DuPage County Court seeking compensatory damages against Cicero and punitive damages against Cicero and Household. Debtors appealed confirmation of Part I. Judge Aspen dismissed Debtors appeal of the Bankruptcy Court's confirmation of Part I, on the grounds of standing and mootness. *In re Andreuccetti,* 127 B.R. 185, 186 (N.D.Ill.1991). The Seventh Circuit reversed the district court's conclusions on the standing and mootness issues, but held that the appeal should be dismissed on the merits because the bankruptcy court had properly analyzed the settlement. *In the Matter of Andreuccetti,* 975 F.2d 413, 419–421 (7th Cir.1992) ("*Andreuccetti*").

During the appeal of Part I, the trustee negotiated Part II of the Plan, which settled the $1.2 million compensatory damage claim against Household for $150,000 minus attorney fees for the appeal.[4] On January 17, 1992, Chief Bankruptcy Judge Schwartz held a hearing on the proposed settlement. On January 22, 1992, Judge Schwartz approved the settlement of the compensatory claim against Household. Debtors now appeal Judge Schwartz' Order confirming Part II of the Plan.

1. Household asserts that this appeal is interlocutory in nature because it is challenging an order approving only a portion of a settlement. (Household's Supplement To Motion To Dismiss Appeal Or Motion For Judgment And Motion For Leave To Cite Additional Authority ("Household Supp."), pp. 2–3 ¶ 8). Household cites to no authority supporting this assertion. Therefore, the court will construe the appeal as one challenging a final judgment, appealable by right pursuant to Bankruptcy Rule 8001(a).

2. Household originally argued that the appeal was moot in its Motion to Dismiss Appeal. (Household's Motion To Dismiss Appeal ("Household Motion"), pp. 2–3). Household has seemingly abandoned that argument in its Memorandum In Support Of Household's Supplemental Motion Or Motion for Judgment ("Household Supp. Memo"). In any event, the court need not reach the mootness issue because the appeal is dismissed on the merits.

3. American Heritage became insolvent and Household purchased certain assets and liabilities of American Heritage, including Mr. Andreuccetti's notes and the foreclosure action.

4. The trustee continued to negotiate a settlement of the remaining compensatory damage claim because Debtors failed to request a stay of the bankruptcy proceedings while they appealed Part I.

### THE MOTION TO DISMISS

Household argues that Debtors' appeal to this court should be dismissed because Debtors are no longer pecuniarily affected by Household's compensatory damage settlement, and therefore, lack standing. Alternatively, Household argues that this case should be dismissed on the merits because the bankruptcy court properly approved the settlement. The court will consider both arguments.

### A. Standing

■ Household argues that the Debtors lack standing to appeal the bankruptcy court's Order because they have no interest in the litigation and are not adversely affected by the Order. A person has standing to appeal a bankruptcy court's order if they are a "person aggrieved" by the order. *Andreuccetti*, 975 F.2d at 416 (quoting *Matter of DuPage Boiler Works, Inc.*, 965 F.2d 296, 297 (7th Cir.1992)). The Seventh Circuit has defined a "person aggrieved" as someone who is affected pecuniarily by the order of the bankruptcy court. *Id.* Thus, a "hopelessly insolvent debtor" has no pecuniary interest and lacks standing to appeal bankruptcy court orders affecting the size of the estate because the order does not diminish the debtor's property or adversely affect his rights. *Id.* at 417.

In *Andreuccetti*, the Seventh Circuit disagreed with the argument that Debtors lacked standing to appeal Part I because they were "hopelessly insolvent." *Id.* at 417. Rather, the Court theorized that had the state court claims gone to trial and Debtors won the amount demanded, Debtors would have emerged from bankruptcy with a substantial surplus. Specifically, the assets of the estate consisted of $114,000 in non-exempt property and contingent claims against Cicero and Household amounting to $3,500,000; for a potential value of $3,614,000. The liabilities of the estate consisted of $32,000 in priority taxes, Household's secured claim of $2,800,000, Cicero's secured claim of $350,000, and $222,000 in unsecured claims, totaling $3,404,000. If the estate had been com-

pletely successful in its claims against Cicero and Household, there would have been a $210,000 surplus for the Debtors. (Household Supp. Memo, pp. 9; Household Motion, Consolidated Disclosure Statement, Ex. A, pp. 7–9). Thus, the court concluded that Debtors "possess a pecuniary interest [in the potential surplus] that could be directly and adversely affected by the confirmation order." *Andreuccetti*, 975 F.2d at 417. Therefore, the Seventh Circuit addressed the merits of the appeal stating, "[w]e cannot hold that the Andreuccettis' contentions with respect to the bankruptcy court's treatment of these state counterclaims are so unmeritorious as to justify terminating the appeal without reaching the merits." *Id.*

■ However, this second appeal arises under a different set of financial circumstances because of the Seventh Circuit's resolution of Part I. In *Andreuccetti*, the court dismissed Debtors' appeal on the merits, holding that the bankruptcy court had properly exercised its discretion in approving the settlement of the state court lawsuits. *Id.* at 421. As a result, the compensatory claims against Cicero and the punitive damage claims against Cicero and Household have been settled, and any hope Debtors had of emerging from bankruptcy with a surplus has now been lost. Therefore, Debtors have no standing to appeal the January 22, 1992 Order confirming the settlement of the compensatory claims against Household because they lack a pecuniary interest in the Order under the analysis articulated by the Seventh Circuit.

An examination of the amounts involved illustrates this point. The assets of the estate currently consist of $114,000 non-exempt property, $230,000 paid by Cicero in settlement, $41,000 paid by Household in settlement, and the contingent compensatory damage claim against Household of $1,200,000; totalling $1,585,000. The estate's liabilities are comprised of priority taxes of $32,000, unsecured claims of $222,000 and Household's claim of $1,910,000; totalling $2,164,000. (Household Supp. Memo, pp. 9–10; Household Motion, Con-

solidated Disclosure Statement, Ex. A, pp. 7–9). Thus, the liabilities are greater than the possible assets of the estate by $579,-000. As stated above, Debtors had a potential surplus of $210,000 before their Part I claims were settled. However, now that the compensatory and punitive claims against Cicero and the punitive claim against Household have been settled, there is no longer any possibility of a surplus because liabilities exceed potential assets. In sum, Debtors are hopelessly insolvent and therefore, have no interest in the litigation between the estate and Household.

Although, the court concludes that Debtors have no standing to appeal, in the interests of complete record, we address the merits.

### B. The Merits

Household argues that the bankruptcy court properly approved the Part II settlement, and that the appeal should be dismissed on the merits. At the hearing before the bankruptcy court, Debtors argued that 1) the $150,000 settlement was unreasonable and 2) the deduction for attorney's fees rendered the settlement amount too speculative to determine the benefit of the settlement.[5] Upon a thorough review of the record, the court agrees that the bankruptcy court properly approved the settlement and that the appeal should be dismissed.

In *Andreuccetti*, the Seventh Circuit addressed the standards for reviewing a bankruptcy court's confirmation order. The court maintained:

> The benchmark for determining the propriety of a bankruptcy settlement is whether the settlement is in the best interests of the estate. Central to the bankruptcy judge's determination is a comparison of the settlement's terms with the litigation's probable costs and probable benefits. Among the factors

the bankruptcy judge should consider in his analysis are the litigation's probability of success, the litigation's complexity, and the litigation's attendant expense, inconvenience, and delay. A bankruptcy court's approval of a settlement of a claim will not be overturned unless it was an abuse of discretion.

*Andreuccetti*, 975 F.2d at 420–21 (citations omitted). The record reveals that the bankruptcy judge properly exercised his discretion in approving the settlement of the compensatory claims against Household. For example, the court gave proper consideration to Debtors' argument that "the deduction of Household Bank's attorneys fees from the one fifty renders the settlement speculative because there is no cap." (Tr. at 5).[6] Although, Household argued that its "reasonable fees will be subject to approval by the Court, and as such, that represents a cap," the court decided that a $10,000 cap on attorney's fees was an appropriate estimate of the settlement deduction. (Tr. at 5–6).

Moreover, Judge Schwartz gave due consideration to Debtors' argument that the $150,000 was unreasonable, but determined that the settlement was in the best interests of the estate. (Order, p. 4) In reaching this conclusion, the court considered the unrebutted testimony of the Trustee Jay Steinberg and Donald Johnson ("Johnson"), special counsel for the Trustee in the DuPage county litigation. Johnson testified that the $150,000 was fair because of the value in ending the case, and because the compensatory damage claim had a marginal likelihood of success. (Tr. at 12–13). Johnson explained that the compensatory damages claim would be attacked as being conjectural and speculative because Mr. Andreuccetti would have to prove that he could complete the condominium project, fill it with tenants, and establish rental rates. (Tr. at 13.) Moreover, Johnson not-

---

**5.** In response to the motion to dismiss, debtors make numerous, vague an accusatory allegations concerning the integrity of this court and the Seventh Circuit as a whole. The court cannot and will not respond to such allegations, and will respond only to the valid objections to Plan II raised before the bankruptcy court.

**6.** The transcript of the January 17, 1992, bankruptcy court proceedings are attached to Household Supp. Memo as Ex. A. References to pages in the transcript are designated ("Tr. at ——").

ed that much would depend upon the credibility of the witnesses, and that Household's expert witnesses were experienced and credible. (Tr. at 14). Johnson also emphasized that Mr. Andreuccetti had become very uncooperative in the past year, and that his assistance would be critical to Johnson's preparation of the case. (Tr. at 15). Johnson concluded that the settlement was in the best interests of the estate. (Tr. at 17).

Additionally, the trustee emphasized that the creditors supported the settlement. (Tr. at 24). The trustee also noted that he valued Johnson's advice, and had rejected other settlements offers during the last four or five years because they were unreasonable. (Tr. at 24). Further, the trustee testified that the advice of counsel made sense to him based upon his long experience as a bankruptcy trustee and lawyer. (Tr. at 26). In sum, the court confirmed the settlement based on the facts that 1) no creditor objected, 2) the witnesses were credible and persuasive, 3) Johnson's explanation of the legal and factual difficulties with the compensatory damage claim weighed in favor of settlement, 4) the trustee believed the settlement to be fair and reasonable based on his counsel's advice and his own evaluation of that advice, 5) the $150,000 settlement was not speculative since the legal expenses are subject to a $10,000 cap and prior approval, and 6) as a whole, the settlement was in the best interests of the estate. (Order, pp. 1–5). Based on this record, the bankruptcy court properly analyzed Part II of the Plan, and did not abuse its discretion in concluding that the settlement proposal was in the best interests of the estate. Accordingly, Household's motion to dismiss Debtors' appeal is granted.

### FEES

■ Lastly, Household moves the court to assess its attorney's fees against Joseph Andreuccetti and his attorney, James Vassilos ("Vassilos"), for failure to appear at a status hearing when instructed to do so by the court. Specifically, on April 3, 1992, Vassilos failed to appear at a court ordered status hearing. Household's counsel trav-

eled from his offices in Wheaton, and was present for the hearing. The court then reset the status hearing for April 16, 1992, and instructed defendant's counsel to advise Vassilos in writing of the new date, and that failure to appear could result in dismissal of the action. Household's counsel mailed this notice. The court also mailed notice of the new status. Vassilos failed to appear this second time.

Household was billed 2.8 hours each at $170.00 per hour, for two round trips from Wheaton to Chicago. Defendant seeks $1,428.00 (8.2 hours at $170 per hour), for the two appearances above and for Vassilos' failure to appear in a related matter before Judge Alesia. Sanctions for counsel's failure to appear in Judge Alesia's court are a matter for Judge Alesia. However, Household's counsel made two fruitless trips to Chicago for status hearings before this court, and Vassilos was warned about sanctions after failing to appear the first time. Thus, the fees for the April 3 and April 16 trips to Chicago are an appropriate sanction. Accordingly, fees are assessed against plaintiff and his counsel in the amount of $952.00 (5.6 hours X $170.00 per hour). Plaintiff is directed to pay such fees by March 12, 1993.

### CONCLUSION

For the foregoing reasons, defendant's motion to dismiss is grated, and defendant's motion for fees is granted in part and denied in part. Plaintiff is directed to pay fees in the amount of $952.00 by March 12, 1993.