In re AMERICAN DEVELOPMENT
INTERNATIONAL CORPORATION,
Debtor.

George S. BAYOUD, Plaintiff–Appellee,

v.

MEDICAL CENTER HOSPITAL OF GARLAND, INC., General Health Services, Inc., Hospital Corporation of America, and Ornda Healthcorp, Inc., Defendants–Appellees.

AMERICAN DEVELOPMENT INTERNATIONAL CORPORATION,
Plaintiff–Appellee,

v.

HOSPITAL CORPORATION OF AMERICA, Defendant–Appellee,

Paige B. Bayoud, M.D., Appellant,

Robert Yaquinto, Jr., Trustee, Appellee,

and

G. Communities, Inc., Appellee.

Civ. A. No. 3:94–CV–2514–D.
Bankruptcy No. 391–33645–SAF–7.
Adv. Nos. 393–3372, 391–3385.

United States District Court,
N.D. Texas,
Dallas Division.

Oct. 27, 1995.

Joyce W. Lindauer (argued), Dallas, TX, for appellant Paige B. Bayoud.

Stephen F. Malouf and Michael R. Mitchell (argued), Law Offices of Stephen F. Malouf, P.C., Dallas, TX, for plaintiff-appellee George S. Bayoud.

Camille R. McLeod (argued), Baker & McKenzie, Dallas, TX, for appellees OrNda Healthcorp, Inc. and G. Communities, Inc.

Robert Yaquinto, Jr. (argued), Trustee, Dallas, TX, for plaintiff-appellee American Development International Corp.

Frank Shor, Dallas, TX, for defendant-appellee General Health Services, Inc.

William B. Chaney (argued), Conant Whittenburg Whittenburg & Schachter, Dallas, TX, for defendant-appellee Hospital Corporation of America.

FITZWATER, District Judge:

This is an appeal from an order of the bankruptcy court approving a compromise settlement agreement and enjoining certain litigation. The court must decide a question of standing to appeal, and determine whether the court below erred when it enjoined a nonbankrupt third party from engaging in nonbankruptcy litigation. The court holds that appellant has standing only to challenge the injunction. The court therefore dismisses the appeal in part. The court concludes that although the bankruptcy court acted properly in several respects, it erred by failing to consider and enter the requisite injunction findings, and its broad injunction is not supported by the record. The court therefore vacates the order approving settlement and remands for further proceedings.

## I

Appellant Paige B. Bayoud, M.D. ("Paige") appeals an order of the bankruptcy court approving a settlement agreement and enjoining certain litigation in the chapter 7 bankruptcy of debtor-appellee American Development International Corporation ("ADIC"), and two adversary proceedings that were consolidated with the ADIC bankruptcy. Although the appeal arises in the context of the bankruptcy of ADIC—Paige's wholly-owned corporation—it is necessary to recount in some detail certain related litigation, spawned by a long-standing and bitter dispute between Paige and his physician-brother, plaintiff-appellee George S. Bayoud, M.D. ("George").[1]

Paige formed ADIC for the purpose of acquiring and owning a medical facility (the "Hospital") located in Garland, Texas. Pursuant to an August 4, 1971 lease agreement (the "Hospital Lease"), North Central Investment Corporation ("NCIC")—owner of the building and land on which the Hospital was located—leased the Hospital to appellee Medical Center Hospital of Garland, Inc. ("MCHG") for a period of 20 years. Paige incorporated MCHG in order to enter into the Hospital Lease and operate the Hospital. Appellee General Health Services, Inc. ("GHS") later purchased MCHG and guaranteed the Hospital Lease. GHS thereafter sold MCHG to appellee Hospital Corporation of America ("HCA"). MCHG and NCIC entered into a supplemental lease agreement (the "Supplemental Lease") of the Hospital. The Supplemental Lease extended the lease term from 20 to 25 years. HCA guaranteed MCHG's obligations under the Hospital Lease and Supplemental Lease. In 1982, as a component of a multi-facility sale, HCA conveyed ownership of MCHG to Republic Health Corporation ("RHC"), the predeces-

---

1. The parties' respective recitations of the relevant background facts vary in certain respects. The court has recounted them in a manner that appears to be substantially undisputed, or that is supported by the record below.

sor of appellee OrNda Healthcorp, Inc. ("ORNDA"). RHC neither assumed nor guaranteed the Hospital Lease or Supplemental Lease.

Prior to and during the relevant time period when the ownership of the Hospital tenant was changing and the Hospital Lease was extended by the Supplemental Lease, Paige and his brother George were involved in litigation concerning ownership of the landlord, NCIC. In *North Central Inv. Corp. v. Bayoud*, Cause No. 78–9851–I in the 162nd Judicial District Court of Dallas County, Texas (the "NCIC Litigation")—a stockholder derivative suit that George initiated— the state court determined *inter alia* that Paige and George each owned 50% of NCIC. The court also appointed a receiver to liquidate NCIC's assets.[2]

On December 30, 1988 the NCIC receiver sold the Hospital building and land to Century 21 Mark IV Realtors, Inc. ("Century 21") for $2.3 million, payable partly in the cash sum of $1,185,643.67 and partly by execution and delivery of a real estate lien note (the "Century 21 Note") in the principal sum of $1,114,166.33. The Century 21 Note was secured by a deed of trust on the Hospital building and land, and was payable to Bill Long, District Clerk of Dallas County, for the benefit of NCIC. Also on December 30, 1988 NCIC assigned its rights under the Hospital and Supplemental Leases to Century 21.

Paige contends that he desired to purchase the Hospital in his own name, but that the state court denied the request because he was an NCIC shareholder. Paige maintains that Century 21 was supposed to acquire the Hospital on behalf of him and his medical company, ADI Medical Group ("ADI Medical"). He attacks the state court's order approving the sale to Century 21 on the ground that the order approved a sale for $2.3 million in cash, and the Century 21 Note should not have been accepted as part of the purchase price. He asserts that he made the loan to ADI Medical to acquire the Hospital and that Century 21 used this money to purchase the Hospital. He contends ADI Medical was to acquire the Hospital and that ADIC was retained to manage the facility. Paige also alleges that the Century 21 Note was obtained by fraud.

Century 21 transferred the Hospital building and land—encumbered by the Century 21 Note—to ADIC on April 1, 1989. On April 4, 1989 ADIC filed for bankruptcy, but the case was dismissed a few months later. On June 23, 1989, as part of the NCIC Litigation, the state court awarded ownership of the Century 21 Note to George. This judgment was affirmed on appeal. During the pendency of the appeal, Paige and NCIC deposited cash in lieu of a supersedeas bond, and later posted a supersedeas bond.

On December 15, 1989 RHC and its parent, REPH Acquisition Company ("REPH"), filed for bankruptcy.[3] MCHG had already vacated the Hospital premises several months earlier, and had subleased the Hospital. On December 28, 1989 MCHG notified ADIC that it was terminating the Hospital Lease. ADIC did not file a proof of claim in the RHC or REPH bankruptcies. HCA filed claims on its own behalf[4] and on behalf of ADIC. RHC initiated various adversary proceedings against HCA. MCHG has since become appellee G. Communities, Inc. a nonoperating shell corporation.

On May 6, 1991 ADIC filed for bankruptcy a second time. George obtained relief from the automatic stay so that he could foreclose on the Hospital based upon nonpayment of

---

**2.** This is a highly abbreviated recitation of the extensive NCIC Litigation, and is limited merely to the portion that bears directly on the present appeal.

**3.** *See generally In re REPH Acquisition Co.*, 134 B.R. 194, 195–96 (N.D.Tex.1991).

**4.** HCA's proofs of claim included claims filed by a separate HCA entity, HCA Health Services of Nevada, Inc. ("HCA–Nevada"). HCA–Nevada was a party to the settlement agreement reached below, but is not a party to this appeal.

the Century 21 Note.[5] During the lift stay proceedings, the bankruptcy court indicated that if the Century 21 Note was fraudulent, the state court could address the issue. George foreclosed on the Hospital on July 2, 1991.

Paige filed suit in *Paige B. Bayoud, Individually and NCIC v. Bayoud, et al.,* Cause No. 91–07734–J in the 191st Judicial District Court of Dallas County, Texas (the "Bayoud Litigation"), alleging that George had wrongfully foreclosed on the Hospital because the Century 21 Note was fraudulently obtained. The state court granted summary judgment against Paige. The court ruled in relevant part that Paige's claims concerning the validity of the Century 21 Note, the enforceability of the lien, and George's rights under the note, were either determined in the NCIC Litigation or were precluded by the doctrine of res judicata. George counterclaimed against Paige and NCIC, alleging that they were liable for a deficiency that remained on the Century 21 Note following foreclosure. The state court held in favor of Paige and NCIC on the note, concluding they were not liable. The court also determined, however, that Paige was liable to George on the supersedeas undertakings posted in connection with the appeal in the NCIC Litigation, and that George was entitled to recover his attorney's fees from Paige.

Following the state district court's decision in the Bayoud Litigation, Paige initiated an appeal (the "Bayoud Appellate Litigation"). The Bayoud Appellate Litigation has been stayed by the state appeals court pending resolution of the present appeal.

The ADIC case was converted to a chapter 7 liquidation by order entered August 6, 1991, and Robert Yaquinto, Jr. ("Trustee") was appointed trustee. On July 1, 1991, while the case was pending in chapter 11, ADIC filed an adversary proceeding against HCA. *American Dev. Int'l Corp. v. Hospital Corp. of Am.,* Adversary No. 391–3385. In this proceeding ADIC sought to recover against HCA for violations of the Hospital

Lease and Supplemental Lease that ADIC contended MCHG committed when it vacated the Hospital in December 1989.

On June 10, 1992 George filed a state court lawsuit against appellees MCHG, GHS, HCA, and RHC, alleging breach of the Hospital and Supplemental Leases. This lawsuit was removed to the bankruptcy court and docketed as *Bayoud v. Medical Ctr. Hosp. of Garland, Inc., et al.,* Adversary No. 393–3372. The proceeding was thereafter consolidated with the ADIC bankruptcy, Adversary No. 391–3385, and the HCA proofs of claim filed in the RHC and REPH bankruptcies.

Paige filed another lawsuit in 1993. In *Bayoud and ADI Medical Group v. Century 21, Mark IV Realtors, Inc., et al.,* Cause No. 93–01407 in the 134th Judicial District Court of Dallas County, Texas (the "Century 21 Litigation"), Paige alleges that the defendants misrepresented facts concerning Paige's execution of documents related to Century 21's acquisition of the Hospital. Paige maintains that as a result, he lost in excess of $1 million in earnest money as well as any right to acquire the Hospital.

Prior to trial of the adversary proceedings below, the parties to the litigation settled all disputes among them, including the adversary proceedings and the proofs of claim filed in the RHC and REPH bankruptcies. The settlement provided that HCA would pay $325,000, and ORNDA would tender $450,000, in settlement to George and ADIC in return for the release of all claims relating to the Leases. George was to receive $600,000 of these settlement proceeds and ADIC was to receive $175,000.

The settlement also stipulated that the bankruptcy court would enter a permanent injunction that *inter alia* precluded any third party—including Paige—who claimed an interest in the Hospital, the Hospital and Supplemental Leases, or any other matter disposed of by the settlement of the adversary proceedings and the resolution of the ADIC bankruptcy, from filing or prosecuting any

---

**5.** ADIC appealed the lift stay order, and Chief Judge Sanders dismissed the appeal.

claims related to these matters. The agreement provided, in pertinent part:

Payment of the HCA and OrNda Settlement Amounts shall be conditioned upon the following:

the entry by the Bankruptcy Court in the ADIC Bankruptcy Case of an Injunction (the "Injunction") permanently enjoining any creditor, equity security holder or other Party in interest to the ADIC Bankruptcy Case, or any third party claiming any interest: (i) in the Premises, (ii) under the Garland Lease Claims, or (iii) to the HCA and OrNda Settlement Amounts, *including specifically, but without limitation, Dr. Paige Bayoud,* from filing or prosecuting any claims which he/she/it may have, whenever arising, against any of the Parties to the date of said Injunction, in any jurisdiction, and all such interest or third parties shall look solely to ADIC's allocable share of the HCA and OrNda Settlement Amounts in satisfaction of any claims which those creditors, equity security holders, parties in interest or third parties may have: (i) to the Premises, (ii) under the Garland Lease Claims, or (iii) to the HCA and OrNda Settlement Amounts; it being the intention of the Parties and an express and essential condition of payment by HCA and OrNda of their respective Settlement Amounts that all of the creditors, equity security holders, parties in interest and other third parties to the ADIC Bankruptcy Case, *including specifically, but without limitation, Dr. Paige Bayoud,* be bound by the provisions of this Settlement Agreement[.]

Settlement Agreement, ¶ III(A)(3)(b) (emphasis added).

The Trustee filed on June 17, 1994 a motion for authority to compromise and settle claims. In the motion, and pursuant to the settlement agreement, the Trustee moved the bankruptcy court to enjoin litigation, as provided in the agreement. The Trustee stated in his motion that such an injunction was necessary, and was "specifically sought to avoid protracted litigation in numerous courts by Paige Bayoud or by any other party in interest."

The bankruptcy court convened a hearing on August 30, 1994, at which it heard testimony and made findings and conclusions. On October 7, 1994 the bankruptcy court entered its order approving the settlement agreement and enjoining further litigation.[6] The order incorporated as an exhibit a transcript of the bankruptcy judge's oral injunction order pronounced during the August 30, 1994 hearing, as modified by the judge prior to entry of the order. With the exception of the Century 21 Litigation, the order enjoins all litigation involving "the settling parties in all the litigation among and between the settling parties and to the creditors and interest holders in this bankruptcy estate." October 7, 1994 Order (adopting oral ruling, Tr. at 107–08, as modified).

Appellant Paige brings the instant appeal from that order, contending the bankruptcy court erred in approving a compromise and settlement: (1) that was not based on an evaluation of the probability of success of the respective positions and adequate consideration for the uncertainty in fact and law; (2) that did not provide an adequate recovery to the ADIC bankruptcy estate; (3) without giving due consideration to the risks, complexity, and likely duration of litigation, as well as attendant costs; (4) that enjoined nonbankrupt third parties from pursuing nonbankruptcy litigation; (5) that enjoined nonbankrupt third parties and thereby effectively deprived them of their right to due process; and (6) that was neither fair nor equitable. Paige also contends (7) that the bankruptcy court erred in proceeding with a hearing on the compromise settlement agreement because Paige was not afforded adequate notice of the hearing.

After this appeal was argued, the Fifth Circuit decided *In re Zale Corp.,* 62 F.3d 746

---

**6.** The order was signed on October 4, 1994. The court will refer to it by its October 7, 1994 entry date.

(5th Cir.1995). The court *sua sponte* invited supplemental briefs concerning the effect, if any, of *Zale* on the issues in this appeal. Paige also contends on the basis of *Zale* that the injunction should be reversed.

## II

Before addressing the merits, the court will consider George's contention[7] that Paige lacks standing to appeal.

Citing *In re Thompson*, 965 F.2d 1136 (1st Cir.1992), George argues that Paige does not have standing to challenge the settlement of adversary proceedings to which he was not a party. He reasons that Paige was merely an unsecured creditor of ADIC and a nonparty to the litigation that was the subject of the settlement order. George contends that because Paige never intervened in the adversary proceedings, he cannot now appeal.

In order to possess standing to appeal a bankruptcy court order, a litigant must qualify as a "person aggrieved" by the order. *In re Andreuccetti*, 975 F.2d 413, 416 (7th Cir.1992) (citing *In re El San Juan Hotel*, 809 F.2d 151, 154 (1st Cir.1987)); *see In re Hipp, Inc.*, 859 F.2d 374, 375 (5th Cir.1988) (per curiam). "This 'person aggrieved' requirement is more exacting than the requirements for general Article III standing." *Andreuccetti*, 975 F.2d at 416; *see Rohm & Hass Tex., Inc. v. Ortiz Bros. Insulation, Inc.*, 32 F.3d 205, 210 n. 18 (5th Cir.1994) (noting that Article III is inapplicable to bankruptcy courts and that "bankruptcy courts still limit appellate standing to those 'aggrieved.'") Generally, only persons who are "directly and adversely affected pecuniarily by an order of the bankruptcy court have been held to have standing to appeal that order." *Andreuccetti*, 975 F.2d at 416 (quoting *In re Fondiller*, 707 F.2d 441, 442 (9th Cir.1983)).

The court agrees with George that Paige lacks standing to challenge most aspects of the bankruptcy court's order approving the settlement. In *Thompson* a chapter 7 debtor and an alleged secured creditor—the debtor's attorney in other court proceedings—attempted to challenge on appeal the settlement of an adversary proceeding between the trustee and the debtor's former husband. *Thompson*, 965 F.2d at 1138–39. The First Circuit held that neither appellant had standing to appeal the bankruptcy court's rejection of their objections to the settlement because neither was a party to, nor had a basis to intervene in, the adversary proceeding. *Id.* at 1146.

In the present case, one adversary proceeding was initiated by George to recover against Hospital tenants and lease guarantors, and the other was filed by ADIC as a debtor-in-possession and then continued by ADIC's chapter 7 trustee after case conversion. The court holds *infra* that Paige had adequate notice of the Trustee's motion to approve the settlement in the adversary proceedings. It follows that he had notice of the adversary proceedings themselves. He has not demonstrated that he had a right to intervene personally in the adversary proceeding prosecuted by ADIC's Trustee. *Cf. id.* at 1143–44 & n. 12 (discussing in standing context requirements under Fed.R.Bankr.P. 7024 for persons, including chapter 7 debtor, to establish "significantly protectable interest" in settlement of adversary proceeding filed by chapter 7 trustee). And he has failed to establish why he could not have sought leave to intervene in the adversary proceeding that George initiated as a state court lawsuit. Therefore, except to the extent the court hereafter holds that Paige has standing, the court concludes that he is without standing to challenge the bankruptcy court's approval of the settlement of the adversary proceedings and of the proofs of claim filed in the RHC and REPH bankruptcies.

Nevertheless, George's standing argument fails to demonstrate a basis for complete dismissal of Paige's appeal. Unlike the appellants in *Thompson*, Paige is not at-

7. The Trustee adopts this contention in his brief. Trustee Br. at 2.

tempting merely to appeal the settlement of the two adversary proceedings to which he was not a party. The settlement approval order is cast more broadly, because it incorporates the portion of the agreement that directly deprives Paige of the ability to continue the Bayoud Appellate Litigation and to institute new lawsuits. With respect to the injunctive relief, Paige's standing to appeal is governed by the "person aggrieved" standard, because the injunction at least impairs his rights. *See In re DuPage Boiler Works, Inc.,* 965 F.2d 296, 297 (7th Cir.) (defining "person aggrieved" to include those whose rights are impaired by bankruptcy court order), *cert. denied,* —— U.S. ——, 113 S.Ct. 409, 121 L.Ed.2d 334 (1992); *Zale,* 62 F.3d at 751 n. 13 (holding that appellants had standing because injunction barred them in any way). Paige has demonstrated that certain components of the order approving the settlement directly and concretely preclude him from engaging in litigation concerning the settled matters and other issues in which he has a legal interest.

Because Paige has standing to appeal the injunctive aspect to the bankruptcy court's order, it follows that he has standing to contest the alleged lack of notice provided him regarding the hearing.

Accordingly, the court dismisses Paige's appeal to the extent he seeks to challenge the bankruptcy court's approval of the settlement of the adversary proceedings and of the proofs of claim filed in the RHC and REPH bankruptcies. The court need not therefore address the first, second, third, and sixth issues presented by the appeal. The court holds that Paige otherwise possesses standing to appeal the bankruptcy court's injunction, and the alleged lack of notice of the hearing.

## III

Paige maintains that he did not receive formal notice of the settlement agreement prior to the August 30, 1994 hearing, and that the bankruptcy court erred as a matter of law by depriving him of due process when

the court proceeded with the hearing once it ascertained that Paige had not been given such notice. Paige contends that because Rule 2002 requires that creditors and parties in interest be given 20 days' notice of a hearing on a compromise and settlement that affects the interest of the debtor in the property of an estate, the order approving the settlement must be reversed. The court rejects Paige's arguments.

### A

■ This court has recognized that "[d]ue process in the bankruptcy context requires that individual notice be given before rights can be affected." *Huddleston v. Nelson Bunker Hunt Trust Estate,* 117 B.R. 231, 232 (N.D.Tex.1990) (citing *Huddleston v. Nelson Bunker Hunt Trust Estate,* 109 B.R. 197, 201 (N.D.Tex.1989)), *aff'd,* 935 F.2d 1290 (5th Cir.1991) (table) (per curiam). When the bankruptcy court finds that proper and adequate notice was given, however, and its findings of fact are not clearly erroneous, the requirements of due process are satisfied. *Id.* at 232–33 (holding due process requirement was satisfied when bankruptcy court determined, based on findings that were not clearly erroneous, that proper and adequate notice of confirmation hearings had been afforded to all persons entitled to receive such notice).

■ "A finding of fact is clearly erroneous when, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed." *In re Placid Oil Co.,* 158 B.R. 404, 412 (N.D.Tex.1993) (quoting *In re Block Shim Dev. Co.–Irving,* 118 B.R. 450, 453 (N.D.Tex.1990), *aff'd,* 939 F.2d 289 (5th Cir.1991)). "If the trier of fact's account of the evidence is plausible in light of the record viewed in its entirety, the appellate court may not reverse it." *Id.* "[T]his court does not find facts. Neither is it free to view the evidence differently as a matter of choice." *Id.* "The bankruptcy judge's 'unique perspective to evaluate the witnesses and to consider the entire context of the evidence

must be respected.'" *Id.* (quoting *Endrex Exploration Co. v. Pampell,* 97 B.R. 316, 323 (N.D.Tex.1989)).

## B

### 1

▮▮▮ The bankruptcy court concluded that "the notice of this hearing is adequate and that Dr. Paige Bayoud has had a full and fair opportunity to be heard in his opposition to the settlement." Tr. at 101. In particular, the judge found that Paige "actually knew about the settlement before the motion was filed and was able to as early as [February 1994] to communicate his objections to the settlement, and thereby put the Trustee on notice as to exactly what it would be that he would contest when [the motion] came on for hearing." *Id.* This finding means Paige knew of the settlement six months in advance of the hearing. The judge also found that Paige had actual notice of the hearing 31 days in advance, providing him "actual knowledge of the settlement in time to even raise his objections both before the actual filing and after the actual filing[;] he had full notice of the hearing and full opportunity to be heard today." *Id.* at 101–02.

On review of the record, this court is not left with the definite and firm conviction that a mistake has been committed. Indeed, the record amply corroborates the bankruptcy court's findings. The hearing transcript consists of 99 pages of testimony and argument.[8] Paige obviously received adequate notice of the hearing because he filed two motions in advance of the proceeding and attended and fully participated. He presented testimony, exhibits, and argument in opposition to approval of the settlement and imposition of an injunction. He was given the opportunity to cross-examine each witness called by the settling parties, including the Trustee.[9] The

8. The bankruptcy court's ruling is set forth on pages 100–08 of the transcript.

9. Paige complains of limits that the bankruptcy court placed on his presentation. The court reviews such restrictions for abuse of discretion.

hearing record reflects that the bankruptcy judge afforded Paige a full and fair opportunity to present his arguments.

### 2

▮▮▮ Paige's Rule 2002 argument likewise affords him no relief. "In bankruptcy, a procedural rule requiring notice is adequately complied with by procedure whereby a party not receiving formal notice does receive actual notice and has some available remedy to set aside the judgment." *In re Toth,* 61 B.R. 160, 166 (Bankr.N.D.Ill.1986) (citing *In re Park Nursing Ctr., Inc.,* 766 F.2d 261, 263 (6th Cir.1985)). In the present case, the bankruptcy court found without clear error that Paige received actual notice. Because Paige knew of and actually participated in the hearing, he was able to avail himself of remedies to set aside the court's approval order.

## IV

Paige challenges the injunction on two related grounds. He contends, first, that the bankruptcy court erred by granting injunctive relief because the order enjoined nonbankrupt third parties from pursuing non-bankruptcy litigation. On the same grounds, he asserts, second, that the injunction deprived him of due process. Paige also argues that the Fifth Circuit's recent opinion in *Zale* presents grounds to reverse the bankruptcy court because (1) Paige did not have notice of the settlement agreement and the Trustee did not show cause to deviate from the normal notice requirements; (2) the parties did not initiate an adversary proceeding; (3) the bankruptcy court did not have jurisdiction over Paige, a nondebtor, as a result of the settlement agreement; (4) the bankruptcy court's § 105 power is limited by its jurisdiction; and (5) the bankruptcy court failed to follow the procedures under § 105 for entry of an injunction because the court (a)

Not only does the record fail to reflect such an abuse, it demonstrates extraordinary patience and deference by the bankruptcy judge to a presentation that often was rambling, tangential, or difficult to follow.

did not conduct an adversary proceeding, (b) did not give him a full and fair trial, and (c) failed to consider the injunction factors.

## A

The court begins with Paige's contention that the bankruptcy court did not follow the proper injunction procedures.

■■■ The bankruptcy court granted the injunction without expressly considering and addressing the injunction factors. This was error. *Zale*, 62 F.3d at 765. The court granted injunctive relief on the ground that it was appropriate to bring finality to the parties involved, thereby leading to the end of litigation, Tr. at 106, and because with respect to the three areas that Paige believed an injunction was inappropriate, there was no hardship imposed by the injunction, *id.* at 107–08. These findings do not address the four injunction factors followed in this circuit, *see Zale*, 62 F.3d at 765 (quoting factors). The court is unable to affirm the bankruptcy court on the basis of implied findings, because the record does not otherwise reflect that the bankruptcy court considered the relevant factors. *See Endrex*, 97 B.R. at 323–24.

If this were the sole basis to disturb the order, the court would do no more than remand so that the bankruptcy court could enter the requisite findings. The court must therefore address other arguments that Paige presents on appeal in order to determine whether there are other errors that mandate a broader remedy on appeal, and, if there are, to guide the bankruptcy court and parties on remand.

## B

The court addresses initially Paige's assertions that he lacked adequate notice of the settlement agreement, and that the parties erred by failing to initiate an adversary proceeding against him.

The court has already held above that Paige received adequate notice of the settlement agreement. That ruling applies equally here, and provides no grounds to reverse the order approving the settlement.

■■■ Although the parties did not file an adversary proceeding with respect to their request for injunctive relief, *Zale* reiterates the Fifth Circuit rule that compliance with the requisites of an adversary proceeding may be waived. *Zale*, 62 F.3d at 763 (citing *In re Haber Oil Co.*, 12 F.3d 426, 440 (5th Cir.1994); *In re Village Mobile Homes, Inc.*, 947 F.2d 1282, 1283 (5th Cir.1991)). In order for there to be a valid waiver, the party deemed to have waived his rights must have been apprised of and had a chance to address all the issues being decided. *Id.* "[P]arties have waived their right to protest the lack of an adversary proceeding when the court afforded them all the protections of an adversary proceeding yet they knowingly failed to litigate a Rule 7001 issue which they had an opportunity to litigate." *Id.*

■■ The court is satisfied from its review of the record that Paige received a full and fair airing of his challenges to the settlement agreement. The court agrees with appellees that *Zale* is in this respect distinguishable from the present case. Unlike the facts of *Zale*, in which appellants' challenge to a settlement was prevented by the bankruptcy court and treated as a collateral and irrelevant sideshow in an otherwise complex and extended hearing, *id.* at 763–64, in the instant case Paige's attack on the settlement easily consumed the bulk of the hearing and was in all respects heard as if in the context of an adversary proceeding.[10]

Nevertheless, *Zale* also holds that the appellants did not receive the equivalent of an adversary proceeding because, as in the present case, the bankruptcy court failed to conduct the proper injunction analysis and make the proper findings. *Id.* at 765 (holding that

---

**10.** That the hearing suffered in quality from Paige's then-*pro se* status does not undercut the adversarial character of the proceeding. The structure of the hearing, and the procedure followed, afforded a litigant in Paige's shoes a fair opportunity to challenge in all material respects the proposed injunction.

because court focused only on fairness of settlement, it failed to address the injunction factors, and there was accordingly no compliance with Rule 7001). The court has already held that this failure by the bankruptcy court requires that the case be remanded for entry of findings. The court also holds that the bankruptcy court must conduct such further proceedings as are necessary under *Zale* to constitute an adversary proceeding or its equivalent.[11]

## C

What remains of Paige's challenge to the injunction order are his contentions that the bankruptcy court lacked jurisdiction to enjoin nonbankrupt third parties from pursuing nonbankruptcy litigation, and that it exceeded its § 105 authority by imposing an injunction of the scope in question.

### 1

The Fifth Circuit noted in *Zale* the limited circumstances in which bankruptcy courts may invoke their § 105 powers to enjoin third-party actions. 62 F.3d at 760–61 (noting limitations on imposition of permanent injunctions involving third-party actions, and limiting temporary injunctions to cases in which unusual circumstances are found). Similarly, this court held in a pre-*Zale* case:

> This court thinks it necessary, however, that the extraordinary step of prohibiting future litigation that does not involve a debtor and estate property be based upon clear findings that the injunction is necessary or appropriate to carry out a particular Code provision or that it is required in order to avoid a substantial burden or impairment to the debtor's case or estate administration. Absent such findings, the bankruptcy court lacks authority under § 105(a) to give its rulings collateral estoppel effect by silencing litigation over them in another forum.

*In re REPH Acquisition Co.*, 134 B.R. 194, 206 (N.D.Tex.1991). Paige maintains that the bankruptcy court erred by imposing an overly-broad injunction that applied to nondebtor third parties. From the court's review of the record, it appears that the relevant considerations for purposes of this argument are the effect of the injunction on the Bayoud Appellate Litigation [12] and on cases that Paige would file absent the injunction.

### 2

▮▮▮▮▮ The bankruptcy court found that the injunction would not present a hardship to Paige, and that it could actually benefit Paige because the state court had determined in the Bayoud Litigation that Page had no personal liability on the Century 21 Note. Paige contends the bankruptcy court misunderstood the effect of enjoining the Bayoud Appellate Litigation. From the court's review of the record, it appears the bankruptcy court did not take into account the full consequences of the injunction.

In the underlying Bayoud Litigation, which the Bayoud Appellate Litigation appeals, the state court held Paige liable on the supersedeas undertakings from the NCIC Litigation, and awarded George attorney's fees against Paige. In December 1994, subsequent to entry of the injunction, George filed in the Bayoud Litigation an application for turnover order against Paige. George recited that the

---

11. The bankruptcy court need not re-plow old ground from the August 30, 1994 hearing. The earlier proceeding need only be duplicated to the extent necessary to comply with *Zale* and this opinion.

12. Although Paige also addresses the NCIC Litigation and the Century 21 Litigation, the court need not discuss them specifically. Paige concedes in his brief that, "As a practical matter, the [NCIC] [L]itigation has been concluded through a series of judgments[.]" Appellant Br. at 22. The court therefore agrees with appellees, *see*,

*e.g.*, George Br. at 24; ORNDA Br. at 11, that Paige cannot demonstrate that the injunction in any manner harms him by precluding him from attempting to litigate that particular case (as contrasted with specific issues presented in it). Paige also concedes that the bankruptcy court did not enjoin the Century 21 Litigation. Appellant Br. at 22. In his brief, he merely poses questions concerning why the bankruptcy court opted not to restrain this litigation but decided to enjoin the other cases.

state court had entered judgment in his favor in the amount of $855,517.78, that the March 9, 1993 judgment had become final, and that it remained unsatisfied. *See* Appellant Br. Ex. 3 (App. for Turnover at 1–2). George requested that the court order Paige to turn over to him any claims that Paige had to certain real property that he had conveyed to a named third party to facilitate satisfaction of the supersedeas bond. *Id.* at 2–3.

As the court interprets the injunction, Paige is precluded from litigating the appeal of the very judgment on which George relies to justify the application for turnover. If so—and the absence of pertinent findings burdens the interpretive task somewhat—the present record is inadequate to support an injunction that has this effect.

Appellees emphasize that Paige is simply attempting to revive by means of the Bayoud Litigation (and, in turn, the Bayoud Appellate Litigation) the claims in the NCIC Litigation that have been resolved against him. They point to Paige's proclivity for litigation, and his relentless and bitter feud with his brother that has proceeded unabated over a period of many years, as evidence that the bankruptcy court properly imposed injunctive relief. There are at least two fallacies with this position. First, as the court has already indicated, the injunction appears to sweep more broadly than simply to preclude relitigation of the issues in the NCIC Litigation. Second, the bankruptcy court must have both the jurisdiction and authority to deprive a party of his day in court. It is not enough to say that Paige's claims are barred by res judicata or a like theory. The state courts presumably are fully capable of telling Paige that his allegations concerning the Century 21 Note, the Hospital purchase, or any other matter, have already been decided adversely to him. And if it is the mere threat of, or the burden of participation in, litigation that justifies the imposition of injunctive relief, the bankruptcy court must justify its injunction on that basis.

Appellees also contend that the causes of action Paige seeks to assert in the Bayoud

Appellate Litigation belong to ADIC, not to Paige individually. It is true that at least some of the claims are ADIC's. George foreclosed on the Hospital building and land pursuant to the Century 21 Note at a time when ADIC—a corporate entity—not Paige individually, owned the property. If there is any right to complain, ADIC, not Paige, owns that right. But not all the claims that are potentially enjoined are owned by ADIC. *Cf.* ORNDA Br. at 10 (stating that "most of the claims that Paige Bayoud asserted in [the Bayoud Litigation] were derivative claims"). This argument is therefore inadequate to justify this aspect of the injunction.

**3**

Even if the injunction is modified to cure Paige's inability to seek reversal of the state court's supersedeas bond ruling, the bankruptcy court must still support its prohibition against unspecified future litigation that Paige might wish to file. The parties' desire to bring litigation to a close may be both understandable and well-intentioned. In a sense, the tenant-hospital corporations whom George and ADIC have sued on the leases and guaranties are asking that, in exchange for the payment of considerable sums in settlement, they not be drawn into the internecine struggles of Paige and George concerning *inter alia* who is the proper landlord. Without discounting the advisability of conditioning settlement in this manner, the court cannot uphold an injunction that broadly precludes nondebtor, nonbankruptcy litigation in the absence of adequate grounds. Accordingly, this aspect of the injunction must also be revisited anew in the bankruptcy court.

**V**

As in *Zale*, 62 F.3d at 765–66, the court concludes that it would be improvident simply to reform the settlement without giving the injunction the full effect intended by the settling parties. The record is replete with indications that the compromise would not have been reached had the injunction not been made a part of it. The settlement agreement itself is explicitly dependent on

938

entry of the injunction. As George aptly notes in his brief, "the issuance of the injunction by the Bankruptcy Court is an integral and essential component of the settlement agreement without which the Settlement Funds will not be paid to the ADIC bankruptcy estate." George Br. at 23. Therefore, in view of the court's decision, the proper course is to vacate the order approving the settlement rather than to reform it.

\* \* \* \* \* \*

The court DISMISSES Paige's appeal for lack of standing except to the extent that he challenges the bankruptcy court's injunction. The court VACATES the October 7, 1994 order, and REMANDS for further proceedings consistent with this opinion.

DISMISSED IN PART; VACATED IN PART AND REMANDED.